873 P.2d 688

**Ken and Karen WARD, husband and wife; Timothy Ward, a minor, by and through Ken and Karen Ward, Plaintiffs–Appellants,**

v.

**MOUNT CALVARY LUTHERAN CHURCH, an Arizona corporation, Defendant–Appellee.**

No. 1 CA–CV 92–0416.

Court of Appeals of Arizona, Division 1, Department E.

April 14, 1994.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, P.A. by Christopher Robbins, Steven M. Rudner, and Carl O. Wortley, III, Phoenix, for plaintiffs-appellants.

Burch & Cracchiolo, P.A. by Brian Kaven and Theodore A. Julian, Jr., Phoenix, for defendant-appellee.

## OPINION

JACOBSON, Presiding Judge.

The primary issue in this appeal is whether the trial court correctly concluded that the doctrine of *res ipsa loquitur* did not apply to an accident involving a 4–year old who broke his femur while under the supervision of a day care center. Because we agree that plaintiffs failed to establish the requisite elements of *res ipsa loquitur* on this record, and

because no question of fact remains regarding plaintiffs' other claims, we affirm the trial court's summary judgment in favor of the day care center.

## FACTUAL AND PROCEDURAL BACKGROUND

On April 18, 1991, 4–year old Timothy Ward broke his femur while in the care of the Christian Children's Center, a day care center that is run by defendant Mount Calvary Lutheran Church (hereafter, "day care center"). The supervising caregiver at the time of the injury testified as follows regarding the incident:

> At approximately 3:00 p.m., I led my group of [approximately 11 or 12] students out to the playground for recess. At that time, Timothy Ward was walking a short distance ahead of me and was under my direct supervision. The students were walking in a line until they reached the breezeway, which is part of the playground area. As Timothy Ward reached the play-ground, he began to run and when he was in the grass area of the playground he fell down.

Another version of the facts attributed by plaintiffs to the caregiver indicated that, as Timothy began to run, "[h]e rounded a corner and [the caregiver] did not see him for a brief moment. She next saw him as he was falling. He told her he fell down." According to plaintiffs, no employee of the day care center actually witnessed Timothy's fall.

On August 14, 1991, Timothy's parents Ken and Karen Ward (hereafter, "plaintiffs") brought suit on behalf of Timothy against the day care center. The complaint alleged claims of negligence, negligent supervision, negligent rendering of emergency treatment, negligence *per se* for violation of administrative regulations designed to protect children, and breach of contract. Regarding negligence, the complaint alleged:

> The facts or circumstances of the injuries sustained by the minor Plaintiff raise a presumption or permit the inference of negligence on the part of Defendant. *The accident of the kind which the minor Plaintiff sustained does not occur ordinarily unless there is negligence.* The instrumentality or agency which caused the injury to the minor Plaintiff was in the exclusive control of the Defendant. The injuries suffered by the minor Plaintiff [were] not due to any voluntary action or contributory negligence on the part of the minor Plaintiff. Defendant's negligence approximately caused the minor Plaintiff's injury.

(Emphasis added.) The day care center denied liability and moved for summary judgment on the basis that plaintiffs had not stated a claim for actionable negligence because the complaint did not allege that the day care center breached a duty of care that proximately caused Timothy to fall. Regarding the other claims in the complaint, the day care center concluded:

> In this case, plaintiffs invoke a variety of legal doctrines rooted in conjecture and founded upon the illegitimate conclusion that someone else is to blame. No matter how the claim is denominated, however, plaintiffs have failed to establish that there is a breach of duty which created an unreasonable risk of harm and proximately caused the injury. Mount Calvary Lutheran Church is therefore entitled to summary judgment as a matter of law.

Plaintiffs offered no factual statement or evidence in support of their response to summary judgment. *See generally* Rule IV(f), Uniform Rules of Practice.[1] Rather, in response to the day care center's statement of facts in support of its motion, plaintiffs contested only the caregiver's statement that she was present when Timothy fell, pointing out that none of the employee caregivers had witnessed Timothy's fall. Plaintiffs concluded, "Defendant's duty of reasonable care requires it to watch and supervise those children within its care. Defendant's Disclosure

---

1. Rule IV(f), Uniform Rules of Practice, provides: . . . Any party opposing a motion for summary judgment shall file a statement . . . specifying those paragraphs in the moving party's statement of facts which are disputed, and also setting forth those facts which establish a genuine issue of material fact or otherwise preclude summary judgment in favor of the moving party.

Statement itself suggests that such duty was breached, as no one saw Timothy Ward as he fell."

Plaintiffs' legal argument in response to the motion was that summary judgment must be denied because the day care center "has not met its burden of proof under the *res ipsa loquitur* doctrine, by failing to establish that it was not at fault in causing Plaintiffs' injuries." Plaintiffs contended that, when properly supervised, children "do not come home from the playground with a break in the largest bone in their body," because "[a] snapped femur is not the ordinary consequence of a small child running on a playground absent negligent supervision." Plaintiffs also stated they intended "to introduce expert testimony at trial ... that healthy femurs do not ordinarily break as a result of a fall." However, no affidavit or other evidence of such expert opinion was submitted to support that statement. Plaintiffs concluded that summary judgment must be denied because (1) the trier of fact could infer negligence under the doctrine of *res ipsa loquitur*, and (2) the motion for summary judgment failed to address the other claims in the complaint, including breach of contract and negligence in rendering first aid.[2]

In reply, the day care center argued that the doctrine of *res ipsa loquitur* did not apply to this case, because, even if negligence could be inferred, plaintiffs had produced no evidence that such negligence proximately caused the injury. Moreover, the day care center contended, "children can fall without someone else being negligent," and pointed out that plaintiffs had failed to present any

evidence to establish that "healthy femurs do not ordinarily break as the result of a fall."

Regarding the merits of the other claims, the day care center argued (1) plaintiffs had not sufficiently alleged negligence *per se* because they had not identified an administrative regulation that had been violated nor established how such a violation caused Timothy's injury; (2) plaintiffs' claim for negligent emergency aid or treatment was barred by the "Good Samaritan" statute, A.R.S. § 32–1471,[3] and (3) plaintiffs had produced no evidence of a contract with the day care center that had been breached to cause Timothy's injury.

After oral argument on the motion,[4] the trial court granted summary judgment in favor of the day care center. Regarding the negligence claim based on *res ipsa loquitur*, the court ruled:

> Other jurisdictions have held that the doctrine [of *res ipsa loquitur* to infer negligence] may be invoked in cases where a child has been injured while under defendants' supervision at a nursery/day care when neither side can present evidence as to how the injury occurred.... In the present case, however, it is known that the plaintiff was injured as the result of a fall.
>
> *Plaintiff maintains that a snapped femur is not the ordinary consequence of a small child running on a playground absent negligent supervision. However, there are no facts in the record to support this allegation.* In addition, the mere fact that an occurrence is rare does not lead to the application of the *res ipsa loquitur*

2. Plaintiffs argued in their response that they had not based their theory of liability solely on the negligence claim, but, *"[r]ather, Plaintiffs assert that Defendant's failure to adequately supervise Plaintiff before the fall as well as Defendant's failure to promptly and properly treat Plaintiff's broken femur after the fall, proximately caused Plaintiff's damages."* (Emphasis in original). However, plaintiffs did not provide the trial court with facts to support its claims of negligent emergency aid, negligent treatment after the fall, and negligence *per se* by violation of administrative regulations.

3. A.R.S. § 32–1471 provides, in part:
   Any ... person who renders emergency care ... shall not be liable for any civil or other damages as the result of any act or omission by

such person rendering the emergency care, or as the result of any act or failure to act to provide or arrange for further medical treatment or care for the injured persons....
We are not called on in this appeal to decide whether this statute applies to the facts of this case.

4. The minute entry record of oral argument on the motion indicates that no court reporter was present, and therefore, no transcript of that proceeding is before this court on appeal. Lacking such a record, we presume that everything that occurred at that hearing supported the trial court's ruling. *Rapp v. Olivo*, 149 Ariz. 325, 330, 718 P.2d 489, 494 (App.1986).

doctrine. There must be evidence that the event or injury is more likely than not the result of negligence.... The circumstances in this case do not create any clear inferences that the accident would not have occurred if the defendant had not been negligent.

(Citations omitted, emphasis added.) Regarding the other claims in the complaint, the court ruled:

Plaintiff has alleged that defendant failed to adequately supervise plaintiff before the fall; was negligent in the rendering of emergency aid; was negligent in the treatment of plaintiff after the fall; was negligent per se due to violation of administrative regulations; and is in breach of contract. *However, there are no facts in the record to support any of these allegations.* Even if it could be assumed that defendant was in some way negligent or was in breach of contract, the record does not support the conclusion that any such negligence or breach was the proximate cause of plaintiff's injury.

IT IS THEREFORE ORDERED granting defendant's Motion for Summary Judgment.

Plaintiffs timely appealed.

## DISCUSSION

### A. *Standard of Review*

■ On appeal from summary judgment, we view the facts in a light most favorable to plaintiffs, as the party opposing the motion. *Chaparral Dev. v. RMED Int'l, Inc.,* 170 Ariz. 309, 823 P.2d 1317 (App.1991). In deciding a motion for summary judgment, the trial court applies the same standard as that used for a directed verdict: if the party with the burden of proof cannot respond to the motion with a showing of evidence creating an issue of fact on an essential element of the claim, then summary judgment should be granted. *Orme School v. Reeves,* 166 Ariz. 301, 310, 802 P.2d 1000, 1009 (1990).

■ On appeal, this court reviews the record *de novo,* applying the same standard as that used by the trial court. *United Bank v. Allyn,* 167 Ariz. 191, 195, 805 P.2d 1012, 1016 (App.1990).

### B. *Res Ipsa Loquitur*

■ *Res ipsa loquitur* is "a theory of circumstantial evidence under which the jury may reasonably find negligence and causation from the facts of the accident and the defendant's relation to the accident." *Jackson v. H.H. Robertson Co.,* 118 Ariz. 29, 31, 574 P.2d 822, 824 (1978); *see also Restatement (Second) of Torts* § 328D, comment b (A.L.I.1965) (hereafter, "*Restatement*"). A plaintiff who successfully establishes the elements of *res ipsa loquitur* may withstand a directed verdict even without direct proof of negligence. *McDonald v. Smitty's Super Valu, Inc.,* 157 Ariz. 316, 318, 757 P.2d 120, 122 (App.1988).

■ The "test" for applying the doctrine to the facts of a specific case has been defined in simple terms as "whether a reasonable man could reach the conclusion from the evidence offered that it was more likely than not that the injury involved was the result of negligence on the part of defendant." *Fowler v. Seaton,* 61 Cal.2d 681, 39 Cal.Rptr. 881, 884, 394 P.2d 697, 700 (1964). The preliminary question whether *res ipsa loquitur* should apply in a particular case, based on whether the circumstantial evidence warrants an inference that defendant's negligence caused the injury, is a question of law for the trial court. *Zimmer v. Celebrities, Inc.,* 44 Colo.App. 515, 615 P.2d 76, 78 (1980); *see also Restatement,* § 328D(2) and (3) ("It is the function of the court to determine whether the inference may reasonably be drawn by the jury, or whether it must necessarily be drawn" but "[i]t is the function of the jury to determine whether the inference is to be drawn in any case where different conclusions may reasonably be reached"); *cf.* W. Page Keeton, ed., *Prosser and Keeton on The Law of Torts,* § 39 at 243 (5th ed. 1984) (hereafter, "*Prosser & Keeton*") (it is for the court to determine, in the first instance, whether reasonable persons on the jury may draw the inference of negligence from the circumstantial evidence).

■ The requisite elements of *res ipsa loquitur* are well established in Arizona:

1. The accident must be of a kind which ordinarily does not occur in the absence of someone's negligence;

2. It must be caused by an agency or instrumentality within the exclusive control of the defendant;

3. It must not have been due to any voluntary action on the part of the plaintiff;[5]

4. Plaintiff must not be in a position to show the particular circumstances which caused the offending agency or instrumentality to operate to its injury.

*Jackson,* 118 Ariz. at 31–32, 574 P.2d at 824–25. If any one these elements is not supported by the evidence, *res ipsa loquitur* does not apply, and the court must grant summary judgment on the negligence claim. *See Orme School,* 166 Ariz. at 310, 802 P.2d at 1009.

■ Our courts have held that the doctrine of *res ipsa loquitur* will be applied "only when it is a matter of common knowledge among laymen or medical men, or both, that the injury would not ordinarily have occurred if due care had been exercised." *Falcher v. St. Luke's Hosp. Medical Center,* 19 Ariz.App. 247, 250, 506 P.2d 287, 290 (1973). This requirement has been described as follows:

> The first requirement involves nothing more than a weighing of the probabilities as to the cause of certain events; if the probabilities weigh heavily in favor of the event having been negligently caused, then *res ipsa* applies. The doctrine permits the trier of fact to rely on its common knowledge and to infer that certain events do not ordinarily occur unless someone has been negligent. The facts must justify the conclusion that negligence is the most likely explanation for the occurrence.

*Tucson Gas & Elec. Co. v. Larsen,* 19 Ariz. App. 266, 267, 506 P.2d 657, 658 (1973). The "common knowledge" relied upon is generally considered to be past experience that is common to the community, which a court may recognize on a basis similar to facts recognized through judicial notice. *Restatement,* § 328D, comment d. However, in situations where "there is no fund of common knowledge which may permit laymen reasonably to draw the conclusion," the parties may provide the evidence. *Id.* In such cases, a plaintiff may present "expert testimony that such an event usually does not occur without negligence" to establish the inference. *Id.; see also Prosser & Keeton,* § 39 at 247 (even where a basis of common knowledge is lacking, expert testimony may provide a sufficient foundation).

■ The doctrine recognizes that some accidents can occur as a matter of common knowledge without anyone's negligence. *See, e.g., id.,* § 39 at 246 (listing "[a] tumble downstairs, a fall in alighting from a standing bus or street car, an ordinary slip and fall" as some events to which *res ipsa loquitur* will not apply). To attribute a circumstantial inference of negligence to such events impermissibly would create a doctrine of strict liability against a defendant. For that reason, the fact that an accident occurred is not enough to permit an inference of negligence. *First Nat'l Bank v. Dupree,* 136 Ariz. 296, 298, 665 P.2d 1018, 1020 (App.1983). Nor does the mere fact that the occurrence or injury is rare lead to the application of *res ipsa loquitur. McWain v. Tucson Gen. Hosp.,* 137 Ariz. 356, 359–60, 670 P.2d 1180, 1183–84 (App.1983). Unless it is within the layperson's common experience, a showing that a plaintiff's injury is "of a kind which ordinarily does not occur in the absence of someone's negligence" requires expert evidence. *Id.*

5. We note that this court has recently questioned whether this element survives in Arizona law after the advent of comparative negligence enacted in 1984. *See McDonald,* 157 Ariz. at 319 n. 1, 757 P.2d at 123 n. 1. We need not address in this case whether "voluntary action" is a distinct element of the doctrine as compared to a defense to defendant's negligence if inferred by the doctrine. We therefore find irrelevant plaintiffs' argument that Timothy is too young to contribute to his own accident. *See, e.g., Vigue v. Noyes,* 113 Ariz. 237, 550 P.2d 234 (1976) (4-year old cannot be contributorily negligent as a matter of law); *Womack v. Preach,* 64 Ariz. 61, 165 P.2d 657 (1946) (4-year old was incapable of contributory negligence). Because we decide that plaintiffs failed to establish the first element of the *Jackson* test, we do not reach an evaluation of the third element in this case.

■ Utilizing these general principles, we find that plaintiffs have failed to establish the first element of *res ipsa loquitur* in this case. A comparison of the facts here to those cases in other jurisdictions cited by both parties will illustrate why we reach this conclusion.

Courts have applied the doctrine of *res ipsa loquitur* in several day care or nursery settings when a small child is seriously injured and no explanation is given for the injury. *See, e.g., Zimmer v. Celebrities, Inc.,* 44 Colo.App. 515, 615 P.2d 76 (1980); *Ward v. Forrester Day Care, Inc.,* 547 So.2d 410 (Ala.1989); *Fowler v. Seaton,* 61 Cal.2d 697, 39 Cal.Rptr. 881, 394 P.2d 697 (1964). For example, in *Zimmer, res ipsa loquitur* provided an inference of negligence when a 25-month old child sustained a skull fracture while being attended in a bowling alley nursery, and the plaintiff provided evidence of exposed pipes of a drinking fountain in the play area and evidence of inadequate supervision, together with evidence indicating that the child could not precipitate such an injury. 615 P.2d at 78–79.

In *Ward,* the parents of an 11–week old child, who had a broken arm when picked up from a day care center, were found to have stated a claim under *res ipsa loquitur* because their evidence established several potentially dangerous conditions that could have injured their child and no evidence indicated the child could have possibly caused the injury. 547 So.2d at 413–15.

In *Fowler,* the guardian of a healthy 3-year old who came home from nursery school with a brain concussion and crossed eyes had stated a claim under *res ipsa loquitur* because plaintiff provided medical evidence that the brain concussion could not have occurred as described by defendant, thus raising the inference that defendant had provided inferentially false explanations of how the injury occurred, indicating a "consciousness of guilt." 39 Cal.Rptr. at 886, 394 P.2d at 701–02.

In each of these cases, a jury could infer that the injury would not have occurred unless the defendant had been negligent, either because of the tender age of the child or because of the nature of the injury.

In other cases, however, courts have found *res ipsa loquitur* unavailable to infer liability when premised only on the fact that a child was injured while present in a day care setting, without any further showing of potential negligence. *See, e.g., Warriner v. Holmeswood Baptist Church,* 548 S.W.2d 259 (Mo.App.1977); *Helton v. Forest Park Baptist Church,* 589 S.W.2d 217 (Ky.App.1979). In *Warriner,* a preschool child left in a nursery sustained a serious injury to his eye; the supervisor told his mother she was not sure how the injury occurred. The complaint was dismissed for failure to state a claim under *res ipsa loquitur* because the bare allegation of an "unusual" injury was not sufficient to infer negligence without evidence of "some act for which the defendant is responsible" that was not performed; the mere occurrence of an injury was insufficient to infer negligence. 548 S.W.2d at 259–61.

In *Helton,* a 2½–year old left in a church nursery during services sustained a severe eye injury while supervised by two adults; neither witnessed her injury nor observed any unsafe condition. *Res ipsa loquitur* did not apply because "the circumstances testified to do not create any clear inference that the accident would not have happened if the appellees had not been negligent;" thus, because a jury could only "speculate, surmise or guess" how the injury occurred, the court granted summary judgment for the defendant, finding that the "appellee-Church was not an insurer of the [plaintiff's] safety." 589 S.W.2d at 219.

In this case, plaintiffs made the bare allegation that it is more probable than not that, absent the day care center's negligence, Timothy would not have broken his leg. This allegation is implicitly based on one of three premises: (1) that 4–year olds do not fall unless someone is negligent; or (2) that Timothy's broken leg could not possibly have occurred from a fall in the grass; or (3) that if the day care center had properly supervised Timothy, he would not have fallen. However, no evidence was presented to support any of these premises.

Regarding the first premise, we believe it is within the common knowledge of the community that 4–year olds can fall while run-

ning without anyone being negligent. Regarding the second premise, no expert testimony by affidavit or otherwise was offered to establish that Timothy's injury could not have been caused by his fall in the grass while running, as stated by the caregiver. As to the third premise, discussed below, no evidence was presented to establish what level of supervision would have prevented the fall. Rather, plaintiffs relied solely on the existence and the severity of the injury to establish a probability of negligence.

The trial court found that this lack of evidence precluded an inference of negligence that would have withstood a motion for summary judgment, and we agree. We cannot recognize, from the common knowledge of the community, and without expert testimony, that it is more likely than not that a normal 4–year old boy is incapable of falling while running to a playground and breaking his femur without the existence of someone else's negligence. Rather, we note that other authorities have also recognized that children of Timothy's age are capable of being injured without anyone's negligence:

> [T]he mere fact that an accident happened and an injury resulted does not, without more, warrant application of the doctrine ... [T]he fact that a particular injury is rare and does not "normally" occur is not in itself proof that it was probably caused by the negligence of those in charge.... Here it is undisputed that plaintiff was a healthy active child almost four years old—i.e., of an age and competency amply sufficient to enable her to walk, run, collide with other children or solid objects, climb, fall down, swing, jump, and generally conduct herself independently of the assistance and support of others, spending an entire nine-hour day at nursery school.... Admittedly the blow here sustained by plaintiff had serious consequences; but this *type* of physical contact—i.e., a bump on the forehead—is among those commonly suffered by children of plaintiff's age in many forms of active play, regardless of

the supervision provided by parent or teacher....

*Fowler,* 61 Cal.2d 681, 39 Cal.Rptr. at 889, 394 P.2d at 705–06 (Schauer, J., dissenting).[6] Based on our conclusion that no evidence on this record supports an inference of defendant's negligence, we hold that plaintiffs failed to establish *res ipsa loquitur.* For that reason, the trial court properly granted summary judgment on plaintiffs' negligence claim.[7]

## C. *Negligent Supervision*

Other than the general allegation in the complaint of "negligent supervision," no facts were presented in opposition to summary judgment to show how the caregiver's level of supervision could have possibly caused or prevented Timothy's fall. The trial court found that, even if negligent supervision were inferred in this case, no evidence in the record indicated that such negligence was a proximate cause of Timothy's injury. We agree. Even viewing the facts as alleged by plaintiffs, Timothy slipped out of view of the caregiver for a few seconds at most. No evidence has been presented that he would not have been injured had he been in the caregiver's sight.

Our supreme court has recognized that adults supervising the actions of children are not subject to strict liability for their injuries:

> To hold that [a teacher] had to anticipate [a student's] act and somehow circumvent it is to say that it is the responsibility of a school teacher to anticipate the myriad of unexpected acts which occur daily in and about schools and school premises, the penalty for failure of which would be financial responsibility in negligence. We do not think that either the teacher or the district should be subject to such harassment nor is there an invocable legal doctrine or principle which can lead to such an absurd result.

---

6. Although we recognize the general reasoning of this aspect of the *Fowler* dissent, we do not necessarily conclude that the result reached by the majority in *Fowler* was incorrect.

7. Because we find that plaintiffs have not established the first element of *res ipsa loquitur,* we need not address the existence of the remaining three elements of the *Jackson* test.

*Morris v. Ortiz,* 103 Ariz. 119, 121, 437 P.2d 652, 654 (1968). Other courts too have recognized this:

> While supervisors of a day nursery are charged with the highest degree of care toward the children placed in their custody, they are nevertheless not the absolute insurers of their safety and cannot be expected or required to prevent children from falling or striking each other during the course of normal childhood play.

*Oldham v. Hoover,* 140 So.2d 417, 421 (La. App. 1st Cir.1962). Additionally, a short absence from supervision of a child is not the proximate cause of the child's injury if the supervisor's presence and attention would not have prevented the injury. *Ohman v. Board of Educ.,* 300 N.Y. 306, 90 N.E.2d 474 (1949) (teacher's short absence from classroom while one student threw pencil at other student not the proximate cause of eye injury); *Tuggle v. Bass,* 240 So.2d 790 (La.App. 2d Cir.1970) (nursery school supervisor's absence of approximately two minutes to answer phone was not proximate cause of 3-year old's knee injury while playing in sand pile).

Here, plaintiffs have failed to present any evidence to support an inference that the caregiver's supervision, whether negligent or not, proximately caused Timothy's broken leg. This lack of evidence regarding causation also supported the granting of summary judgment in this case.

### D. *Plaintiffs' Other Claims*

Plaintiffs also argue on appeal that the trial court erred in dismissing the remaining claims of negligent care and treatment and negligence *per se* based on violation of day care regulations because the "gist" of the day care center's motion for summary judgment was the *res ipsa loquitur* issue. Plaintiffs allege that they "had not been put on notice" to produce facts regarding these other claims at the time of oral argument on the motion for summary judgment, and "never had the opportunity to marshall their legal arguments or gather affidavits and other evidence to support the additional claims."

We point out again that, with no transcript of the oral argument before us, and with no Rule 11(c) narrative statement of the proceedings, we must presume that the events at the oral argument on the motion supported the trial court's ruling. *See* note 4, *supra.* We further note that the day care center's motion for summary judgment sought summary judgment "on all counts" of the complaint, that plaintiffs discussed the other counts in their response, and that the day care center's reply specifically argued why each of the other theories of liability were inadequate as a matter of law. Thus, we conclude that plaintiffs were "put on notice" before oral argument that the day care center was not seeking a partial summary judgment.

Under Rule 56(f), Arizona Rules of Civil Procedure, plaintiffs could have sought a continuance if unable to present by affidavit or deposition those facts essential to their opposition to summary judgment, but did not. Because we presume that plaintiffs had ample opportunity to make such a motion for continuance at oral argument and did not do so, we will not consider reversing summary judgment on an argument that it was granted prematurely. *Wells Fargo Credit Corp. v. Smith,* 166 Ariz. 489, 493, 803 P.2d 900, 904 (App.1990). The record does not indicate any response to defendant's arguments regarding the claims of negligent emergency treatment, breach of contract, or violation of an unidentified administrative regulation; thus, we find no factual issue remaining on those allegations and, on this record, we find no error in the trial court's granting of summary judgment on all claims in the complaint.

### CONCLUSION

For the foregoing reasons, we affirm the trial court's order granting summary judgment in favor of the day care center.

NOYES and FIDEL, JJ., concur.