Tad Denson, a private pilot, sued Thomas Carrio, individually and doing business as Carrio Contractors, to recover for damage done to his airplane when it collided with a scaffold that was lying in the taxiway of Mobile's Brookley Airport. Carrio filed a counterclaim seeking damages for the destruction of his scaffold. After a bench trial in which the court was presented ore tenus evidence, the trial court entered a judgment in favor of Denson and awarded him $9,621. The trial court also entered a judgment in favor of Denson on Carrio's counterclaim. Carrio appealed.
 "The standard of review applicable to judgments based on ore tenus evidence is well established. 'Where a trial court has heard ore tenus testimony, as in this case, its judgment based on that evidence is presumed correct and will be reversed only if, after consideration of the evidence and all reasonable inferences to be drawn therefrom, the judgment is found to be plainly and palpably wrong.' McInnis v. Lay, 533 So.2d 581, 582
(Ala. 1988) . . . Furthermore, '[t]his Court . . . will affirm the trial judge's decision if, under any reasonable aspect, it is supported by any credible evidence.' Chism v. Hicks, 423 So.2d 143, 144 (Ala. 1982) . . . (emphasis added). Finally, 'this court cannot overturn [the] finding[s] of fact by the lower court unless the decision is unsupported by the evidence . . . and is plainly and palpably erroneous.' "
Humphries v. Whiteley, 565 So.2d 96, 101-02, (Ala. 1990);Meadows v. First National Bank of Ashford, 568 So.2d 303, 304
(Ala. 1990).
According to the record, Carrio was a sub-contractor on a construction project on a building that sat about 150 to 200 yards from the taxiway. Carrio had put up a scaffold for use outside the building. About a week before the April 16, 1994, accident, he said, his workers had used wire to tie the scaffold to the building because it was being used on unlevel ground and it was shaky. The scaffold was narrow and had a tendency to flip over. Carrio testified that when he and his crew left the building on the afternoon of April 15, the day before the accident, the scaffold was standing upright next to the building but that he had "no idea" whether it was still tied to the building. He said he did not know how the scaffold came to be in the *Page 123 
middle of the taxiway, which was about 150 yards on the other side of a pile of bricks from where the scaffolding was being used.
Denson testified that just past dawn on April 16, 1994, he and two of his associates were preparing to fly his single-engine Piper Cherokee from Brookley Airport, where he kept the plane, to New Orleans, for a seminar. Denson said that at about 6:40 a.m., he pulled out onto the taxiway. He said that as he made a sharp turn from taxiway "Alpha" onto taxiway "Hotel," he turned on top of something metal. Denson testified that there had not been anything standing up in the taxiway, but that after the collision, he saw a six-foot piece of scaffolding lying on its side. It rose to a height of about 30 inches, he said.
The collision broke off one of the tips of the airplane's propeller and caused gashes along the propeller. The accident also left dents down the left wing and on the underside of the cowling under the engine. The parties stipulated that the airplane had received $9,621 in damage. The scaffold, valued at $300, was destroyed in the collision.
Carrio contends that the trial court erred in applying the doctrine of res ipsa loquitur. The doctrine, which means "the thing speaks for itself," essentially allows a party to prove negligence by using circumstantial evidence. Under certain circumstances, the factfinder can infer negligence from surrounding facts if the exact cause of an injury is unknown or unknowable. Khirieh v. State Farm Mutual Automobile InsuranceCo., 594 So.2d 1220 (Ala. 1992).
"Usually, for res ipsa loquitur to apply, either the instrumentality or the act that caused the injury must be shown." Id. at 1223, citing Ward v. Forrester Day Care, Inc.,547 So.2d 410 (Ala. 1989) (emphasis in the original). There is no dispute that the scaffold on the taxiway was the instrumentality that caused the injury. With the instrumentality known, the plaintiff then has to prove the elements of res ipsa loquitur:
 "(1) [T]he defendant must have had full management and control of the instrumentality which caused the injury; (2) the circumstances must be such that according to common knowledge and experience of mankind the accident could not have happened if those having control of the management had not been negligent; (3) the plaintiff's injury must have resulted from the accident."
Khirieh, 594 So.2d at 1223. In discussing the element of control, the Supreme Court has stated,
 "[I]n making the negligence point to the defendant, [the plaintiff usually shows] that a specific instrumentality has caused the event, or that 'all reasonably probable causes were under the exclusive control of the defendant.' [Ward, 547 So.2d at 414]. Stated differently, 'the exclusive control requirement is subordinated to its general purpose, that of indicating that it probably was the [alleged wrongdoer's] negligence that caused the accident.' 57B Am.Jur.2d Negligence § 1874 (1989)."
Khirieh, 594 So.2d at 1224 (emphasis in the original).
In the question of control lies the problem. While there is no dispute that Carrio owned the scaffold and that the scaffold lying in the taxiway is what caused the accident, is does not necessarily follow that the scaffold could not have been on the taxiway without negligence on Carrio's part. Denson argues that there was no evidence that the construction project had been vandalized in the past, so, he says, there is no reason to think vandals moved the scaffold to the taxiway, as theorized by Carrio. However, there was also no evidence that in the three months the scaffold had been in use at the construction site, it had ever come loose from the building and rolled away. Therefore, there is no reason to think that the night before the accident, the scaffold rolled around a pile of bricks and across 150 yards to end up in the middle of the taxiway. In fact, Carrio's theory seems more plausible.
The doctrine of res ipsa loquitur does not require that a defendant be held liable merely because no explanation exists for how an accident occurred. There must be some indication that the defendant was negligent and that the accident occurred as a result of the negligence. See, W. Prosser, Torts, § 39 *Page 124 
(4th ed. 1971). In going over the record and Denson's brief on appeal, we find that Denson offered no explanation for how the scaffold got into the taxiway other than to say that because it was there, Carrio had to be negligent. However, we cannot say, based on the common knowledge and experience of mankind, that this accident could not have happened if Carrio had not been negligent. In fact, common knowledge and experience points to some intervening cause for the scaffold's being on the runway, and not negligence on Carrio's part.
The evidence presented does not support the judgment of the trial court, and we hold that the judgment of the trial court is plainly and palpably wrong. Therefore, that portion of the judgment finding in favor of Denson and awarding him $9,621 is due to be reversed.
Carrio also argues that the trial court erred in denying his counterclaim for damages for the loss of his scaffold. Specifically, Carrio claims, the trial court erred in not finding that the pilot breached his duty of "extreme" care by failing to keep a proper lookout while operating his aircraft. However, that argument is based on the assumption that Denson owed Carrio a duty of care. We hold that he did not.
As a general rule, "every person owes every other person a duty imposed by law to be careful not to hurt him."Smitherman v. McCafferty, 622 So.2d 322, 324 (Ala. 1993), quoting Southeastern Greyhound Lines v. Callahan, 244 Ala. 449,453, 13 So.2d 660, 663 (1943). To determine whether a duty existed, this court should consider a number of factors, including public policy, social considerations, and whether the injury was foreseeable to Denson. Smitherman, 622 So.2d at 324. "The essential question is 'whether [Carrio's] interests are entitled to legal protection against [Denson's] conduct.' " Id.
quoting P. Keeton et al., Prosser and Keeton on the Law ofTorts, § 53, at 357 (5th ed. 1984).
In this case, a scaffold belonging to Carrio was lying on its side in the middle of a taxiway. Denson said that he was keeping a lookout as he taxied to the runway, but that when he made a sharp turn from one taxiway onto another, his airplane collided with the scaffold. It was not foreseeable to Denson that a scaffolding from a building project 150 yards away would be lying across the taxiway — a place one would expect to find clear of any debris or clutter. We hold, therefore, that Denson did not owe Carrio a duty to avoid hitting the scaffold. The trial court properly entered a judgment in favor of Denson on Carrio's counterclaim.
That portion of the judgment finding in favor of Denson on his negligence claim against Carrio and awarding him $9,621 is reversed, and the cause is remanded for the trial court to enter a judgment consistent with this opinion. The remainder of the judgment is affirmed.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
ROBERTSON, P.J., and CRAWLEY, J., concur.
YATES, J., concurs in the result.