THOMAS, Judge.
 

 On January 17, 2007, Etinosa Edosom-wan, a four-year-old boy, was enrolled at A.B.C. Daycare and Kindergarten, Inc. (“the day-care facility”). As Etinosa got up from his nap cot, which was three inches above the floor, he tripped or became tangled in the sheet covering his nap cot. Etinosa fell, and he began crying. One of the teachers assigned to Etinosa’s room, Essence Lewis, responded to Etino-sa’s cries by coming to his assistance. She asked if he could walk, and Etinosa told her that he could not. Lewis said that when she asked Etinosa what happened, Etinosa told her that he had fallen on his covers.
 

 Lewis carried Etinosa to the office of the director of the day-care facility, where the director, Sheila Box, telephoned Etino-sa’s mother, Betty Edosomwan, to inform her that Etinosa had fallen, that he was crying, and that Betty should come to the day-care facility to see if Etinosa needed medical assistance. According to the daycare facility’s answers to interrogatories, Betty indicated she would come immediately to the day-care facility. However, again according to the day-care facility’s answers to interrogatories, Betty did not arrive at the day-care facility until one and one-half hours after the telephone call to her was placed.
 

 Upon Betty’s arrival, which she said occurred about 15 minutes after she received the telephone call from the day-care facility, she asked Etinosa what was wrong. She said that he pointed to his left leg and said that it hurt. She, like Lewis, inquired of Etinosa whether he could stand or walk, to which he responded “no.” Betty carried Etinosa to her automobile and transported him to the emergency room at Children’s Hospital. Betty testified that she had not been able to determine that Etinosa’s leg was broken before the emergency-room physician examined him, despite the fact that she was a certified nursing assistant.
 

 Betty testified that, while at the emergency room, she asked Etinosa how he fell and hurt his leg. She said that Etinosa told her that he was folding his blanket and fell down. Etinosa repeated that same story to Betty on another occasion.
 

 On February 19, 2008, Betty, as Etino-sa’s mother and next friend, sued the daycare facility and three fictitiously named parties, alleging that the day-care facility and the fictitiously named parties had negligently or wantonly exercised their duty to care for Etinosa, resulting in his injury; that the day-care facility and the fictitiously named parties had negligently hired, trained, and/or supervised the day-care facility’s employee, who was designated as fictitiously named party B; and that the
 
 *593
 
 day-care facility and the fictitiously named parties had committed an assault and battery on Etinosa. The day-care facility answered the complaint, and the parties conducted discovery. On December 4, 2008, the day-care facility moved for a summary judgment on all claims in the complaint. The trial court entered a judgment in favor of the day-care facility on January 20, 2009. Betty timely appealed to the Alabama Supreme Court, which transferred the appeal to this court, pursuant to Ala. Code 1975, § 12-2-7(6).
 
 [1]
 

 We review a summary judgment de novo; we apply the same standard as was applied in the trial court. A motion for a summary judgment is to be granted when no genuine issue of material fact exists and the moving party is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. A party moving for a summary judgment must make a prima facie showing “that there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law.” Rule 56(c)(3);
 
 see Lee v. City of Gadsden,
 
 592 So.2d 1036, 1038 (Ala.1992). If the movant meets this burden, “the burden then shifts to the nonmovant to rebut the movant’s prima facie showing by ‘substantial evidence.’ ”
 
 Lee,
 
 592 So.2d at 1038 (footnote omitted). “[Substantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.”
 
 West v. Founders Life Assurance Co. of Florida,
 
 547 So.2d 870, 871 (Ala.1989);
 
 see
 
 Ala.Code 1975, § 12-21-12(d). Furthermore, when reviewing a summary judgment, the appellate court must view all the evidence in a light most favorable to the nonmovant and must entertain all reasonable inferences from the evidence that a jury would be entitled to draw.
 
 See Nationwide Prop. & Cas. Ins. Co. v. DPF Architects, P.C.,
 
 792 So.2d 369, 372 (Ala. 2000); and
 
 Fuqua v. Ingersoll-Rand Co.,
 
 591 So.2d 486, 487 (Ala.1991).
 

 On appeal, Betty argues only that the application of the doctrine of res ipsa loquitur precludes the entry of a summary judgment in favor of the day-care facility. Betty makes no arguments concerning the summary judgment in favor of the daycare facility on the claims asserting negligent hiring, training, or supervision or assault and battery; therefore, Betty has waived any arguments concerning the summary judgment on those claims, and we affirm the summary judgment insofar as it relates to those claims.
 
 Tucker v. Cullman-Jefferson Counties Gas Dist.,
 
 864 So.2d 317, 319 (Ala.2003) (stating that issues not raised and argued in brief are waived).
 

 Res ipsa loquitur means “ ‘the thing speaks for itself,’ [and the doctrine] essentially allows a party to prove negligence by using circumstantial evidence.”
 
 Carrio v. Denson,
 
 689 So.2d 121, 123 (Ala.
 
 *594
 
 Civ.App.1996). However, “[t]he doctrine of
 
 res ipsa loquitur
 
 does not require that a defendant be held liable merely because no explanation exists for how and accident occurred. There must be some indication that the defendant was negligent and that the accident occurred as a result of that negligence.”
 
 Carrio,
 
 689 So.2d at 123. “If one can reasonably conclude that the accident could have happened without any negligence on the part of the defendant[ ], then the
 
 res ipsa loquitur
 
 [doctrine] does not apply.”
 
 Ex parte Crabtree Indus. Waste, Inc.,
 
 728 So.2d 155, 158 (Ala.1998).
 

 In order for the doctrine of res ipsa loquitur to apply, a plaintiff must prove three elements:
 

 “ ‘(1) [T]he defendant must have had full management and control of the instrumentality which caused the injury; (2) the circumstances must be such that according to common knowledge and experience of mankind the accident could not have happened if those having control of the management had not been negligent; [and] (3) the plaintiffs injury must have resulted from the accident.’ ”
 

 Carrio,
 
 689 So.2d at 123 (quoting
 
 Khirieh v. State Farm Mut. Auto. Ins. Co.,
 
 594 So.2d 1220, 1223 (Ala.1992)). The day-care facility specifically challenges Betty’s inability to establish the second element, arguing in its summary-judgment motion, and in its brief on appeal, that Betty did not, and could not, produce substantial evidence indicating that the circumstances of Etinosa’s accident and injury were “ ‘such that according to the common knowledge and experience of mankind the accident could not have happened’ ” without negligence on the part of the day-care facility.
 
 Carrio,
 
 689 So.2d at 123.
 

 Betty relies exclusively on the only case in Alabama applying the doctrine of res ipsa loquitur to a situation involving the injury of a child in a day-care center:
 
 Ward v. Forrester Day Care, Inc.,
 
 547 So.2d 410 (Ala.1989). The child in
 
 Ward,
 
 Garrett Ward, was an 11-week-old infant who suffered a broken arm.
 
 Ward,
 
 547 So.2d at 410-11. His parents, on his behalf and individually, sued Forrester Day Care, Inc., alleging that its employees had negligently supervised Garrett in the nursery, resulting in his injury.
 
 Id.
 
 at 411. Our supreme court reversed the summary judgment in favor of the day-care center, in part, because the Wards presented evidence concerning several conditions at the day-care center that they contended could have caused Garrett’s injury.
 
 Id.
 
 In deciding that the doctrine of res ipsa loquitur should apply, our supreme court relied on
 
 Zimmer v. Celebrities, Inc.,
 
 44 Colo.App. 515, 615 P.2d 76 (1980), which applied the doctrine in a case involving a severe skull fracture received by a 25-month-old child while in the care of a nursery provided for patrons of a bowling alley.
 
 Ward,
 
 547 So.2d at 413.
 

 The
 
 Zimmer
 
 court based its conclusion that the doctrine of res ipsa loquitur applied on a consideration of the elements of the doctrine as adopted in Colorado.
 
 [2]
 
 
 *595
 

 Zimmer,
 
 44 Colo.App. at 517, 615 P.2d at 78. First, the court concluded that the plaintiffs had presented evidence indicating that “the injury would not have occurred but for the negligence of someone.”
 
 Zimmer,
 
 44 Colo.App. at 517, 615 P.2d at 79. The court noted that the evidence had indicated that the child had been inadequately supervised and that the child had been placed in a play area that contained exposed pipes, thus indicating that the injury might have resulted from those potential acts of negligence.
 
 Id.
 
 Because the nursery had clearly assumed the responsibility of caring for the child, the court concluded that the nursery had a duty of reasonable care when caring for the child.
 
 Zimmer,
 
 44 ColoApp. at 518, 615 P.2d at 79. Based on the fact that the child had not been suffering from the injury when he was left in the nursery, the court concluded that the plaintiffs had proven that there was no evidence of other responsible causes, and the court also determined that the evidence demonstrated that the child himself was not responsible for his own injuries, precluding any responsibility or negligence on the part of the plaintiffs.
 
 Id.
 
 Thus, the Colorado Court of Appeals concluded that the doctrine of res ipsa loquitur applied to the case and affirmed the judgment entered on the jury’s verdict in favor of the plaintiffs.
 
 Id.
 

 Although in
 
 Ward
 
 our supreme court discussed
 
 Zimmer
 
 at length, the opinion in
 
 Ward
 
 did not explain how the Wards had established the elements of res ipsa loqui-tur. We surmise that the fact that Garrett was only 11 weeks old contributed to the conclusion that the second element of res ipsa loquitur was satisfied because Garrett’s injury was one “ ‘that according to the common knowledge and experience of mankind ... could not have happened’ ” without negligence on the part of the daycare center.
 
 Carrio,
 
 689 So.2d at 123. Thus, based on Garrett’s age, his injury, and the evidence presented by the Wards that certain conditions at the day-care center were likely to cause injury, the supreme court concluded that the doctrine of res ipsa loquitur applied as to the claims asserted against the day-care center.
 

 Although we understand Betty’s reliance on
 
 Ward,
 
 that case is distinguishable from the present case. The child in
 
 Ward
 
 was only 11 weeks old and was unable to participate in any activity that could have resulted in his broken arm. However, unlike the infant in
 
 Ward,
 
 Etinosa was four years old at the time of his injury, and he was able to participate in activities that pose a risk of injury, like running and jumping.
 

 The day-care facility argues that Etino-sa’s age, coupled with the “ ‘common knowledge and experience of mankind’” that four year olds can fall and break a bone without negligence on the part of another, prevent the application of the doctrine of res ipsa loquitur in this case. As support for its argument, the day-care facility relies on
 
 Ward v. Mount Calvary Lutheran Church,
 
 178 Ariz. 350, 873 P.2d 688 (Ct.App.1994), in which the Arizona Court of Appeals affirmed a summary judgment in favor of the church on the ground that the doctrine of res ipsa loqui-tur did not apply to a situation involving the broken leg of a four-year-old boy, Timothy, who fell while running on the playground of the church’s day-care center. The Arizona Court of Appeals concluded that the plaintiffs had failed to prove that “[t]he accident [was] of a kind which ordinarily does not occur in absence of some
 
 *596
 
 one’s negligence.”
 
 Mount Calvary Lutheran Church,
 
 178 Ariz. at 355, 873 P.2d at 693.
 

 In reaching its conclusion, the Arizona Court of Appeals explained:
 

 “In this case, plaintiffs made the bare allegation that it is more probable than not that, absent the day care center’s negligence, Timothy would not have broken his leg. This allegation is implicitly based on one of three premises: (1) that 4-year olds do not fall unless someone is negligent; or (2) that Timothy’s broken leg could not possibly have occurred from a fall in the grass; or (3) that if the day care center had properly supervised Timothy, he would not have fallen. However, no evidence was presented to support any of these premises.
 

 “Regarding the first premise, we believe it is within the common knowledge of the community that 4-year olds can fall while running without anyone being negligent. Regarding the second premise, no expert testimony by affidavit or otherwise was offered to establish that Timothy’s injury could not have been caused by his fall in the grass while running, as stated by the caregiver. As to the third premise, discussed below, no evidence was presented to establish what level of supervision would have prevented the fall. Rather, plaintiffs relied solely on the existence and the severity of the injury to establish a probability of negligence.
 

 “The trial court found that this lack of evidence precluded an inference of negligence that would have withstood a motion for summary judgment, and we agree. We cannot recognize, from the common knowledge of the community, and without expert testimony, that it is more likely than not that a normal 4-year old boy is incapable of falling while running to a playground and breaking his femur without the existence of someone else’s negligence. Rather, we note that other authorities have also recognized that children of Timothy’s age are capable of being injured without anyone’s negligence:
 

 “ ‘[T]he mere fact that an accident happened and an injury resulted does not, without more, warrant application of the doctrine ... [T]he fact that a particular injury is rare and does not “normally” occur is not in itself proof that it was probably caused by the negligence of those in charge.... Here it is undisputed that plaintiff was a healthy active child almost four years old — i.e., of an age and competency amply sufficient to enable her to walk, run, collide with other children or solid objects, climb, fall down, swing, jump, and generally conduct herself independently of the assistance and support of others, spending an entire nine-hour day at nursery school.... Admittedly the blow here sustained by plaintiff had serious consequences; but this
 
 type
 
 of physical contact — i.e., a bump on the forehead — is among those commonly suffered by children of plaintiffs age in many forms of active play, regardless of the supervision provided by parent or teacher....’
 

 “Fowler [v. Seaton],
 
 61 Cal.2d 681, [695,] 39 Cal.Rptr. [881,] 889, 394 P.2d [697,] 705-06 [ (1964) ] (Schauer, J., dissenting).”
 

 Mount Calvary Lutheran Church,
 
 178 Ariz. at 356-57, 873 P.2d at 694-95 (footnote omitted).
 

 As the Arizona Court of Appeals further observed,
 

 “[t]he doctrine [of
 
 res ipsa loquitur
 
 ] recognizes that some accidents can occur as a matter of common knowledge without anyone’s negligence. ... To attrib
 
 *597
 
 ute a circumstantial inference of negligence to such events impermissibly would create a doctrine of strict liability against a defendant. For that reason, the fact that an accident occurred is not enough to permit an inference of negligence. ... Nor does the mere fact that the occurrence or injury is rare lead to the application of
 
 res ipsa loquitur.”
 

 Mount Calvary Lutheran Church,
 
 178 Ariz. at 355, 873 P.2d at 693.
 

 Based on the evidence presented by both parties in support of and in opposition to the day-care facility’s summary-judgment motion, we cannot agree with Betty that she has established the second element of res ipsa loquitur — “ ‘that according to the common knowledge and experience of mankind the accident could not have happened’ ” without negligence on the part of the day-care facility.
 
 Carrio,
 
 689 So.2d at 123. The evidence indicates that Etinosa became tangled in the sheets of his nap cot, tripped, and fell on the floor as he attempted to get up from his nap. Those facts do not demonstrate an unusual mode of injury and do not indicate that the day-care facility was negligent and caused Etinosa’s injury as a result of that negligence. Because “one [could] reasonably conclude that the accident could have happened without any negligence on the part of the [day-care facility], ... the
 
 res ipsa loquitur
 
 [doctrine] does not apply.”
 
 Ex parte Crabtree Indus. Waste,
 
 728 So.2d at 158. The trial court properly entered a summary judgment in favor of the daycare facility, and we affirm that judgment.
 

 AFFIRMED.
 

 THOMPSON, P.J., and PITTMAN, BRYAN, and MOORE, JJ., concur.
 

 [1]
 

 . Although Betty included fictitiously named parties in the complaint, the record does not reflect that the complaint was ever amended to substitute any actual parties for the fictitiously named parties; thus, no parties other than the day-care facility were served with the complaint.
 

 "When there are multiple defendants and the summons (or other document to be served) and the complaint have been served on one or more, but not all, of the defendants, the plaintiff may proceed to judgment as to the defendant or defendants on whom process has been served and, if the judgment as to the defendant or defendants who have been served is final in all other respects, it shall be a final judgment.”
 

 Rule 4(f), Ala. R. Civ. P. Thus, the existence of the fictitiously named parties in the complaint does not prevent the judgment entered by the trial court from being final.
 
 See Griffin v. Prime Healthcare Corp.,
 
 3 So.3d 892 n. 1 (Ala.Civ.App.2008).
 

 [2]
 

 . Those elements differ somewhat from the elements of res ipsa loquitur under Alabama law. In Colorado, the elements are as follows:
 

 “ T. "The event is the kind which ordinarily does not occur in the absence of negligence.
 

 " ‘2. Other responsible causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence.
 

 " '3. The indicated negligence is within the scope of the defendant's duty to the plaintiff.”
 
 Restatement of Torts,
 
 2d § 328D and
 

 " ‘4. "The plaintiffs are free from any contributory negligence or other responsibilities.” W. Prosser,
 
 Law of Torts
 
 (2d Ed.) § 42, at 199.'”
 

 
 *595
 

 Zimmer,
 
 44 Colo.App. at 517, 615 P.2d at 78 (quoting
 
 Branco Eastern Co. v. Leffler,
 
 173 Colo. 428, 435, 482 P.2d 364, 367 (1971)).