PITTMAN, Judge.
The City of Montgomery (“the City”) appeals from a judgment, entered after an ore tenus proceeding, of the Montgomery Circuit Court entered in favor of the plaintiff, Mary Ann Patterson, in her civil action against the City in which she asserted a single negligence claim; the trial court ruled that the plaintiff should recover $35,500 from the City, a damages amount placing the City’s appeal within this court’s exclusive appellate jurisdiction under Ala. Code 1975, § 12-3-10. We reverse the trial court’s judgment and remand the cause for the entry of a judgment dismissing the plaintiffs action.
The plaintiff sued the City in November 2008, alleging in her complaint that she had been injured while attending a football game in November 2006 that had been played at a football stadium operated by the City, Cramton Bowl; the complaint further alleged that, while the plaintiff was standing in a concession-stand line at that facility on the date in question, an overhead window covering collapsed, striking her head. The plaintiff also averred in her complaint that her injuries were the result of the City’s negligence and that she had filed a verified claim with the City in February 2007 for compensation therefor.[1] The City filed a motion to dismiss alleging that the plaintiffs complaint failed to state a claim, relying upon statutes limiting liability of owners of premises used for sporting or recreational purposes (see Ala.Code 1975, §§ 35-15-22 and 35-15-23); however, that motion was denied. The City then answered the complaint, asserting those statutes as affirmative defenses. The City thereafter moved for a summary judgment, again relying upon the recreational-use statutes; that motion was also denied.
The trial court then held an ore tenus proceeding on the merits of the plaintiffs claim. After the plaintiff had testified and her counsel had rested, the City, citing Ala.Code 1975, § 11-47-190, as well as the recreational-use statutes, orally sought a “directed verdict” (actually, orally requested the entry of a judgment on partial findings; see Rule 52(c), Ala. R. Civ. P., and Ragsdale v. Ragsdale, 991 So.2d 770, 772 & n. 1 (Ala.Civ.App.2008)) in its favor, asserting that the plaintiff had failed to show that any agent, officer, or employee in the line and scope of work for the City had acted in a negligent manner. The trial court denied the City’s request, and the City then presented its case. At the close of the trial, the City again raised the statutes it had cited in its request for a “directed verdict” as a basis for a judgment in its favor. The trial court thereafter rendered a judgment in favor of the plaintiff, awarding her $35,500 in damages.
Because the application of Ala.Code 1975, § 11-47-190, is placed squarely in *266 issue by the parties, we quote from its pertinent portions at length:
“No city or town shall be liable for damages for injury done to or wrong suffered by any person or corporation, unless such injury or wrong was done or suffered through the neglect, carelessness, or unskillfulness of some agent, officer, or employee of the municipality engaged in work therefor and while acting in the line of his or her duty, or unless the said injury or wrong was done or suffered through the neglect or carelessness or failure to remedy some defect in the streets, alleys, public ways, or buildings after the same had been called to the attention of the council or other governing body or after the same had existed for such an unreasonable length of time as to raise a presumption of knowledge of such defect on the part of the council or other governing body....”
Speaking eight years after the incorporation of the predecessor of § 11-47-190 into the 1907 Alabama Code, Justice Thomas C. McClellan summarized the effect of the statute:
“By Code 1907, § 1273 [now codified at Ala.Code 1975, § 11-47-190], the liability of municipalities for damages for injuries done or suffered is limited to two distinct classes of negligent misconduct or omission, viz.: (a) Where the wrong done or suffered was the proximate result of culpable act or omission of some agent, officer, or employee engaged, within the line of his duty, in the municipality’s service; (b) where the wrong done or suffered was the proximate result of culpable municipal omission ‘to remedy some defect in the streets, alleys, public ways, or buildings, after the same (i.e., defect as defined) has been called to the attention of the council, or after the same (i.e., defect as defined) had existed for such unreasonable length of time as to raise a presumption of knowledge of such defect on the part of the council.’ ... In the first class (a) are wrongs or injuries resulting from negligence of agents, etc., of the municipality, consistent with the doctrine of [respondeat] superior; and in the second class (b) are wrong[s] or injuries for which the municipalities are only liable for culpable neglect to remedy a condition negligently created or made or allowed to exist by a person or corporation not related in service to the municipality — a stranger to the municipal service or function.”
City of Birmingham v. Carle, 191 Ala. 539, 541-42, 68 So. 22, 23 (1915); accord Ellison v. Town of Brookside, 481 So.2d 890, 891-92 (Ala.1985).
In attacking the correctness of the trial court’s judgment, the City asserts that liability could not properly attach under the first of the two statutory classes of liability because, the City says, the plaintiff failed to present evidence demonstrating that an agent, officer, or employee of the City, through negligence, carelessness, or unskillfulness, caused her injury so as to warrant application of the doctrine of re-spondeat superior. The City further asserts that liability could not properly attach under the second of the two statutory classes of liability because, the City says, the plaintiff failed to present evidence demonstrating that the City’s governing body had actual or constructive notice of the existence of a defective condition at Cramton Bowl. In response, the plaintiff contends that she adduced substantial evidence of the “negligence of [municipal] employees arising within the line and scope of their employment” (ie., conduct falling within the first statutory class of municipal liability); she then posits that because, in her view, the City or its em *267 ployees “affirmatively created the dangerous condition” so as to obviate the need for notice, the plaintiff was not required to demonstrate that the City had actual or constructive knowledge of a defect under the second prong. In other words, we do not perceive the plaintiff to contend that the City is liable under the second prong because of a failure to remedy a dangerous condition after having notice thereof; rather, we view the plaintiff as contending solely that the City is liable under principles of respondeat superior under the first prong.[2]
“The four well-known elements necessary for recovery in any negligence action are: (1) existence of a duty on the part of the defendant; (2) a breach of that duty; (3) existence of a causal relationship between the defendant’s conduct and the plaintiffs injury; and (4) a resulting injury to the plaintiff.” Chatman v. City of Prichard, 431 So.2d 532, 533 (Ala.1983). Because the plaintiff in this case sought to affix liability upon the City for the alleged conduct of one or more of the City’s alleged agents or employees,[3] she bore not only the common-law burden of demonstrating that that alleged agent or employee would be liable to her in a negligence action, see Stephens v. City of Butler, 509 F.Supp.2d 1098, 1116 (S.D.Ala.2007), aff'd, 261 Fed.Appx. 240 (11th Cir.2008) (not selected for publication in the Federal Reporter), but also the burden of demonstrating (a) that the alleged agent or employee was, in fact, an agent or an employee of the City; and (b) that the actor’s conduct amounted to, in the words of § 11-47-190, “neglect, carelessness, or unskillfulness ... [while] engaged in work” for the City (a requirement that negates the potential for vicarious municipal liability as to intentional tort claims as well as to claims based upon conduct committed by a city’s agents or employees amounting to wantonness). See Stephens, 509 F.Supp.2d at 1116. Of course, the fact that the trial court entered a judgment in favor of the plaintiff, by implication, indicates that that court deemed each of those elements to have been met. See Franklin v. City of Athens, 938 So.2d 950, 953 (Ala.Civ.App.2005) (plurality opinion quoting Calvert Fire Ins. Co. v. Green, 278 Ala. 673, 677, 180 So.2d 269, 273 (1965), for the proposition that, in an action involving a negligence claim, “ ‘[t]he absence of any one ... [element] renders a complaint bad or the evidence insufficient’”), aff'd, 938 So.2d 959 (Ala.2006).
Viewing the record in a light most favorable to the plaintiff, as we must (see Driver v. Hice, 618 So.2d 129, 131 (Ala.Civ.App.1993)), we note the following pertinent facts. The plaintiff, who held season tickets to Alabama State University home football games, arrived via automobile at a football game in November 2006 with a neighbor; she paid to park in the municipal parking lot adjacent to Cramton Bowl and entered the stadium. Once inside the stadium gates, the plaintiff decided to purchase some tortilla chips, cheese, and a soft drink, and she placed an order for those items at a stadium concession-stand *268 window. As the plaintiff handed currency through the window to the concession attendant to pay for that order, the plaintiffs head was struck by a “real thick board” that had been located over the plaintiffs head, approximately 10 feet above the stadium floor at that location; the plaintiff was stunned for a few minutes by the impact of the blow.
The sole evidence adduced by the plaintiff concerning any potential involvement by a City employee in connection with the incident was her testimony that, before she had left the concession stand, “a young man,” who “evidently was working with the concession stand,” approached her and told her to “stand right [t]here” because he was “going to get [his] supervisor.” The plaintiff also testified that the man had identified himself as a worker for the City named “Mr. Hooks.” The plaintiff stated that she could not remember the name of the supervisor, whom she described as being a “white male,” but she did state that she had attempted to remain at the game following the injury until the pain in her head became unbearable, after which she sought medical attention at local hospitals.
In denying the City’s oral request for a judgment on partial findings, the trial court relied upon the plaintiffs testimony that “Mr. Hooks” had said that he was a municipal employee and that “[h]e was going to get a supervisor,” and that court suggested that “[sjomebody caused” the board over the concession-stand window to fall. The trial court further invoked, sua sponte, the doctrine of res ipsa loquitur in opining that “whoever was in charge of ... operation of the stand and the [board] fell, it was negligence on somebody’s part,” and the court ruled that “if Hooks works for the City and goes and gets his supervisor who works for the City, that gets [the plaintiff] past [the City’s] motion.”
In Carrio v. Denson, 689 So.2d 121, 123 (Ala.Civ.App.1996), we noted that res ipsa loquitur, a doctrine whose name means “ ‘the thing speaks for itself,’ ” “essentially allows a party to prove negligence by using circumstantial evidence” and that, “[u]nder certain circumstances, the fact-finder can infer negligence from surrounding facts if the exact cause of an injury is unknown or unknowable” because of the operation of the doctrine. In this case, because the instrumentality that caused the plaintiffs injury is undisputedly known — a board that fell from above a concession-stand window — the application of the doctrine depends upon proof of the following three elements:
“ ‘(1) [T]he defendant must have had full management and control of the instrumentality which caused the injury; (2) the circumstances must be such that according to common knowledge and experience of mankind the accident could not have happened if those having control of the management had not been negligent; (3) the plaintiffs injury must have resulted from the accident.’ ”
Id. (quoting Khirieh v. State Farm Mut. Auto. Ins. Co., 594 So.2d 1220, 1223 (Ala.1992)).
The only person actually identified by the plaintiff as an agent of the City in this case, “Mr. Hooks,” is described by her as being a concession-stand worker who entered her presence and then left her presence in order to notify a superior. According to testimony adduced during the City’s presentation of evidence, however, the concession stand is operated by employees of the City’s food-services department, a department that was identified as being separate from the City’s parks-and-recreation department (which provides the Cramton Bowl facility to local educational institutions to use). Notably, nothing in the record in this case indicates the precise job *269 responsibilities of “Mr. Hooks,” much less that he was employed by the City to be responsible for inspecting or securing boards located above concession stands in Cramton Bowl. Indeed, as the City notes in its opening brief, the record also lacks any evidence showing precisely how the board had been secured when it had been placed in its initial position above the plaintiff (whether by a chain, a rope, a latch, or other means), and there is likewise no evidence revealing that “Mr. Hooks” or some other employee or agent of the City pulled down the board onto the plaintiffs head or improperly secured the board above her head on the day of her injury.
The trial court did not believe those evidentiary omissions were fatal to the plaintiffs case, stating that “[i]f the City was managing the concession stand ... [and] if the [board] fell as a result of not meeting a reasonable standard of securing the [board],” the plaintiff was entitled to recover. In making that statement, however, the trial court assumed a fact not in evidence: that the board actually fell because some employee or agent of the City acted in a manner to breach a standard of care owed to the plaintiff by failing to properly secure the board so that it would not fall and hit concession-stand customers. Although the doctrine of res ipsa loquitur can, in appropriate cases, permit an inference that a negligent act must have occurred and that only the defendant could have committed it, the doctrine requires that the incident could not have happened if those having control of the management had not been negligent: “ ‘[i]f one can reasonably conclude that the accident could have happened without any negligence on the part of the defendant ], then the res ipsa loquitur [doctrine] does not apply.’ ” Edosomwan v. A.B.C. Daycare & Kindergarten, Inc., 32 So.3d 591, 594 (Ala.Civ.App.2009) (quoting Ex parte Crabtree Indus. Waste, Inc., 728 So.2d 155, 158 (Ala.1998)).
Here, because of the paucity of evidence adduced by the plaintiff, it is not proper to conclude that the board that struck the plaintiff could have fallen only because of the negligence of “Mr. Hooks” or some other employee or agent of the City. For example, the board could had been held in place by a rope that gave way because of a manufacturing defect, by a chain that pulled away from a hook because of a sudden and unpredictable gust of wind, or by a metal latch that lost internal structural integrity in a manner that was invisible to an observer. Because it was not shown in this case that the incident in which the plaintiff was injured could have occurred only because of negligence on the part of an agent or employee of the City, we cannot agree with the trial court’s invocation of the doctrine of res ipsa loquitur to supply the necessary element of “neglect, carelessness, or unskillfulness” on the part of such an employee or agent committed in the line and scope of his or her employment in order to affix liability upon the City. In the absence of proof of a negligent act committed by a person as to whom the City may properly be held vicariously liable or proof from which such an inference could properly have been drawn, the plaintiff was not entitled to recover under § 11-47-190.
Based upon the foregoing facts and authorities, we conclude that the trial court erred in entering its judgment in favor of the plaintiff. That judgment is reversed, and the cause is remanded for the trial court to enter a judgment in favor of the City.
REVERSED AND REMANDED.
THOMAS, J., concurs.
*270 THOMPSON, P.J., and BRYAN and MOORE, JJ., concur in the result, without writings.

. Two sections of the Alabama Code, taken together, require the presentment of such a claim within six months of the accrual of a tort cause of action against a municipal body as a prerequisite to the filing of a civil action asserting that claim. See Ala.Code 1975, §§ 11-47-23 and 11-47-192.

. Our conclusion that the plaintiff's claim is based upon respondeat superior rather than a failure to remedy a dangerous condition thus renders moot the question whether, as the plaintiff contends, the City has improperly raised for the first time on appeal the issue whether the City’s governing body was placed on sufficient notice to warrant liability under the second prong of § 11-47-190.

. A party, such as the plaintiff in this case, is permitted by statute to allege in any pleading that another party, such as the City, committed an act and to prove that that party’s employee or agent actually committed the act at issue. See Ala.Code 1975, § 6-5-300.