35 So.2d 193

## SOUTHERN RY. CO. v. QUILLEN.
### 8 Div. 412.

Supreme Court of Alabama.

March 18, 1948.

Rehearing Denied May 13, 1948.

Mitchell & Poellnitz, of Florence, and Clopper Almon, of Sheffield, for appellant.

538

John C. Martin, of Sheffield, and Smith & Tompkins, Jas. E. Smith, Jr. and Jas. H. Tompkins, all of Tuscumbia, for appellee.

**FOSTER, Justice.**

This is an action under the homicide statute, Code 1940, Tit. 7, § 123, in which plaintiff obtained a judgment, and the Southern Railway Company prosecutes this appeal.

The case went to the jury on counts 4 and 6, and the appellant, to which we will refer as the defendant, insists that both of those counts are subject to the demurrer interposed.

That question involves the real heart of the controversy, and, therefore, it is necessary, in order that those counts may be properly analyzed, to state the nature of the case as made by the evidence. It is that in the city of Sheffield a highway and paved street extend south, which is the main artery to Tuscumbia, and it is known as Montgomery Avenue. It is one hundred feet wide: the tracks of the defendant cross that street extending east and west. There are several tracks which parallel each other, making this crossing. The street is paved at and south of this crossing for a width of seventy feet from the west toward the east, leaving thirty feet of the street unpaved. North of the crossing the whole one hundred feet is paved. The railroad tracks therefore extend across that thirty feet, which is still unpaved.

South of the railroad tracks there are various obstructions in the thirty foot strip east of the pavement, consisting of poles, an open sewer, weeds and grass, and uneven terrain; and it is not used by the public for any purpose, or fit for use in its present condition.

The deceased was found dead lying across the rails of the south track at said crossing. There was no indication of a violent injury. The contention of plaintiff is that deceased's foot was caught in one of the rails, causing him to fall, and his neck struck the opposite rail. The only charge of negligence against the defendant is in substance in failing to have its line of rails flush with the level of the ground. At this point, there was no general use by the public of the thirty foot space on the east side of Montgomery Avenue, and south of the railroad, for any purpose whether vehicular or pedestrian. Across the tracks north, the paved sidewalk ended at the approach of the railroad crossing, so that persons traveling farther south on Montgomery Avenue went down on the paved portion, since there was no other way.

There was some evidence that plaintiff's intestate had been drinking or was drunk. How he was caused to fall or did fall is not certain, and in fact the defendant insists that there is nothing upon which to predicate a reasonable inference as to how it occurred.

The plaintiff claims that the jury was justified in finding that the raised rails and crossties at this point were dangerous and unlawful, and, therefore, in violation of the duty of the railroad company, and that from the circumstances the jury could infer that plaintiff's intestate had his foot caught under the rail and fell across the track, causing his death.

The case presents some interesting questions at law, which are raised both on the pleadings and on the introduction of evidence, in the court's general charge, as well as on the refused charges requested by defendant. We think it would be advisable at this point to analyze some of the principles of law, before trying to apply them specifically to the situations in which the questions arose.

In the first place, we have a statute in Alabama, which is not new, section 648, Title 37, Code, and which provides:

"Street and other railroad companies shall be required to keep their tracks in repair, using such rails as may be prescribed, and shall maintain and keep in repair the streets between their rails and for eighteen inches on each side, in such manner as the council may prescribe. Any public utility using the streets of the city or town shall at all times, in a manner prescribed by the council, render the use of such streets safe to vehicles and to persons, and all tracks on such street shall, when required by the council, be placed at any fixed grade, and changed, free of expense to the municipality, when found necessary."

This statute did not impose on the railroad company, where their tracks cross streets or highways, any greater duty than that which otherwise existed with regard to it, unless the city so prescribes. 3 Elliott on Railroads, 3d Ed., section 1576 (1108).

Without regard to that statute, the rule has been established in many jurisdictions, as expressed in what we suppose is a leading case, since it is quoted and otherwise referred to generally on that subject, as follows:

"But that was in a large, populous, and busy city, where a vast multitude of vehicles and people would be continuously passing and repassing. And, as we have already seen, it would be very much otherwise in respect to railroad crossings in the rural districts; and the same would to a considerable extent be true in regard to villages and many cities, or some localities in them. What is to be considered as the extent of the approaches to the railroad crossing must be determined by what is reasonable in the particular case, and this is fixed, for the time being at least, by the actual approach or structure made by the railroad company, with the acquiescence of the public and the public authorities. It does not appear from the averments of the declaration that the city of Bloomington has ever taken any steps or done anything under sections 9, 10, and 11 of the act of

March 31, 1874 [Smith-Hurd Stats. c. 114, §§ 63–65], in the way of constructing or altering the railroad crossing or the approaches thereto on Jefferson Street." Bloomington v. Illinois Central R. R. Co., 154 Ill. 539, 39 N.E. 478, 481.

That quotation has been adopted by standard law writers an the subject, and the opinions in many cases. 3 Elliott on Railroads, 3d Ed., section 1587 (1114 e); 51 Corpus Juris 651, notes 98-99, page 660, note 66; 105 A.L.R. 560 et seq.; Chicago, R. I. & P. R. R. Co. v. Redding, 124 Ark. 368, 187 S.W. 651, 1 Ann.Cas. 1918D, 183; Cleveland, C. C. & St. L. R. R. Co. v. Johns, 106 Ill.App. 427.

It is thus expressed in 3 Elliott on Railroads, 3d Ed. 1587 (1114 e):

"The question is sometimes important as to the width of the highway crossing to be maintained by a railroad company. Here it seems a sensible rule that the railroad company must construct and maintain crossings and approaches for the entire width of the street in populous and busy cities where great numbers of vehicles and people use them. But where a few people and vehicles use the crossings, the width to be constructed and maintained is to be determined largely by what is reasonably required to accommodate the public travel over such crossings and it has been observed that this 'is fixed, for the time being at least, by the actual crossings and approaches which are made by the railroad companies with the acquiescence of the public and the public authorities.'"

We think the principle, which we have quoted above, is one which should be our guide in the consideration of the sufficiency of counts 4 and 6 here involved, and the admissibility of certain evidence which was offered, and otherwise where the question is presented.

Plaintiff relies largely upon a case decided by our Court of Appeals, Birmingham Ry., Light & Power Co. v. Donaldson, 14 Ala.App. 160, 68 So. 596, and also the cases of Montgomery St. Ry. Co. v. Smith, 146 Ala. 316, 39 So. 757, and Alabama Power Co. v. Lewis, 224 Ala. 594, 141 So. 229.

Count 4 of the complaint in the instant case was an attempt to appropriate for present purposes count 1 in the Donaldson case, supra, which was held not to be subject to the grounds of demurrer interposed. But there are some very material distinctions for consideration between count 4 here, and count 1 as there discussed.

In the first place, the street intersection in the Donaldson case, supra, was in the city of Birmingham where Nineteenth Street intersects Sixth Avenue. There seems to have been no question considered in the analysis of that count as to whether there would be a different situation in a different sort of locality, knowing evidently that that particular intersection was one where the entire width of both streets was used by much traffic.

In count 4 here, it is alleged that the defendant negligently allowed a portion of its tracks at that location to be in a dangerous condition, which was dangerous to public travel, in that, said tracks were not let down into the avenue, and were negligently allowed to remain uncovered and projected over the crossing; and that the death of plaintiff's intestate was proximately caused by the negligence of defendant in failing to maintain a proper and safe condition for public travel on that portion of defendant's track.

It will be noted that those allegations assume the duty, without alleging, what the conditions were at that particular point where plaintiff's intestate met his death, which made it the duty of the defendant to place its rails on a level with the street. It would appear that the pleader drew his complaint on the theory that under all conditions such duty exists on the part of the railroad company for the entire width of the street, and where in the Donaldson case, supra, no reference was made to any particular circumstances which required the railroad company to put its tracks on the level of the street, the failure to do so, should not be construed as a holding that under other circumstances and under all conditions such a duty exists.

The extent of the rule is not there attempted to be stated, further than as ap-

plied to such a crossing, and as raised by demurrer. There was no demurrer there, as there is here, raising the point that the traffic there did not require the tracks to be level with the ground.

■ Of course there can be no actionable negligence without a breach of duty. If it was not the duty of the railroad company at this point thus to construct and maintain its railroad in respect to the level of the street, it would not be negligence merely not to do so, and no other negligence is charged in the complaint, or shown in the evidence.

Whereas, as the authorities stated, and we have quoted them above, the duty of the railroad company, when its track crosses a street or highway, is determined by what is reasonable in the particular case, and that is dependent upon whether at that particular location there was sufficient traffic along the street across the railroad tracks as to raise the duty on the part of the railroad to lower its tracks to the level of the street. Moreover, in those cases it is also said, as is stated in the extract which we have quoted, that the duty of the railroad company is ordinarily fixed for the time being at least, by the actual approach or structure made by the railroad company, with the acquiescence of the public and public authorities.

■ It appears that this situation has remained at this place for many years. The defendant offered proof that it had promptly complied with any and all requirements as to the condition and repairs at said crossing which were made by the city of Sheffield or its officials prior to the date of this accident, and on that date there was no such request which had been made by the city, and which had not been complied with.

The court sustained objection to such testimony. All of which goes to illustrate the theory of the complaint, and the theory on which the case was tried and went to the jury.

The fact that the city had not made any demand upon the railroad company in this connection is appropriate under section 648, Title 37, supra. The requirement there is that the railroad must comply with the directions of the council, and the tracks shall be placed at any grade and changed whenever required by the council. The fact that the council had made no such requirements of the railroad company, which had not been complied with, is prima facie evidence that the actual crossing and approach as then existing meets the requirements of safety within the principle which we have stated.

We would not undertake to say, however, that it would be more than prima facie so, because the railroad company and the city council could not by their cooperation exonerate either from the consequences of maintaining a nuisance in a public street.

■ Objection is also made to count 4 of the complaint, in that, it fails to allege that a condition which the railroad company is alleged to have maintained, proximately caused plaintiff's intestate to fall on or across the said tracks, and as a result of said negligence suffered bodily injury. The fall is not alleged to have been due to the unsafe condition of the tracks, but may have been caused by something wholly foreign to that condition; but, as he did fall, the condition of the tracks being of a hard substance may have caused the injury, without having caused him to fall. The action may be founded on the allegation either that the unlawful and dangerous condition of the tracks, as alleged, proximately caused him to fall, from which fall his injury and death proximately resulted, or that such a fall otherwise produced might reasonably have been anticipated, and that the condition left by defendant was unlawful and dangerous to one who should so fall. But we think the allegation that the death of plaintiff's intestate was proximately caused by the negligence of defendant in failing to maintain a proper and safe condition for public travel is sufficient to admit proof of either alternative, provided there is sufficiently alleged a duty to maintain a proper and safe condition there. Claude Jones & Son v. Lair, 245 Ala. 441, 17 So.2d 577. Whether the act of defendant in not embedding its tracks to the level of the ground was unlawful depends upon its legal duty in respect to that situation. That

duty does not exist merely because it is a part of the street, but it is controlled by the character and extent of its use. We think that count is subject to demurrer in assuming the duty without alleging the facts on which the duty depends.

Count 6 of the complaint is more defective than count 4 with respect to the matters which we have discussed. It is not necessary to point out specifically as to count 6 particular allegations which we think are short of complying with the requirements of the law.

We do not find any of the cases cited by plaintiff, which is in conflict with what we have said. In Montgomery Street Railway v. Smith, supra, there was a pitfall on the right of way, such as an excavation or ditch, and that is not dependent upon the same principle because the pitfall is itself inherently dangerous when the public have a right to pass along the location of it. In the case of Alabama Power Co. v. Lewis, supra, the plaintiff was injured on account of an alleged defective condition of the tracks of the street railway, which defect consisted in the fact that the rails, although embedded in the street, had become worn, defective and shredded, and that a portion of the iron or steel was torn apart and projected above the rails, and when plaintiff attempted to cross she tripped and fell. Of course that situation has no parallel with this. The opinion was devoted largely to a consideration of the objection to the introduction of a city ordinance. The court held that whether the ordinance was admissible or not, without being specifically pleaded, its admission was error without injury, since it exacted no higher duty or greater care than the statute, which we have quoted above.

■ The court charged the jury in substance that it is the duty of the railroad to have and keep that part of its street occupied by it safe for public travel, and free from pitfalls, for the whole width of the street: exception was taken to this.

This was evidently the interpretation by the court of Montgomery St. Ry. Co. v. Smith and Birmingham Ry., Light & Power Co. v. Donaldson, supra. By that charge the duty is alleged to extend to the whole width of the street, without considering whether the extent of the traffic using the crossing requires the whole width to be kept safe, though there are no pitfalls. Of course there should not be pitfalls as in Montgomery St. Ry. Co. v. Smith, supra, dangerous to a person with the right to cross there. But it is not dangerous merely to have the tracks raised above the level of the ground, unless the extent of traffic at that locality is such as to make it so; or, as expressed in the Donaldson case, supra [14 Ala.App. 160, 68 So. 599], the duty requires that the tracks at the crossing "be kept in such condition that the ordinary and expected travel of the locality may pass with reasonable ease and safety."

The excerpt from the charge, to which exception was taken, was evidently framed without observing the principles to which we have referred, and since the evidence did not show any pitfalls it was erroneous as applied to the facts of this case.

■ Refused charge 13 is to the effect that the law expects a railroad to maintain a safe crossing with a highway only within the defined limits of the use of the highway by the public.

This is substantially according to the principles of law, to which we have referred, except that it is subject to the requirements of the city in that respect as made plain by our statute, supra. But it was not shown that the railroad had not observed all such requirements, and the charge correctly stated the law as affected by the evidence before the court.

We think the judgment should be reversed for overruling the demurrer to counts 4 and 6; and for refusing to allow defendant to prove that the city had made no requirements of the railroad, which had not been complied with as to the manner of constructing its tracks and of keeping and maintaining in repair the street where the tracks cross it; and in refusing charge 13, and in orally charging the jury, as above stated, to which exception was taken. We do not think it is

necessary to analyze the other assignments of error.

Reversed and remanded.

GARDNER, C. J., and LAWSON and STAKELY, JJ., concur.