Joe A. Yates, administrator of the estate of Clara Yates Phillips, deceased; Sherri and Jeffery Phillips, by and through their father and next friend, Wallace Phillips; and Wallace Phillips, individually (all hereinafter called "the plaintiffs"), appeal from a summary judgment entered in favor of the Town of Vincent in an action alleging wrongful death and personal injuries. We affirm.
On March 31, 1990, Clara Phillips was killed and Sherri and Jeffery were injured when the automobile in which they were riding collided with an automobile driven by Ricky L. Smith at the intersection of Shelby County Highways 62 and 85. The intersection, which was located inside the limits of the Town of Vincent, had been the scene of another accident within the preceding two weeks. During the earlier accident, a stop sign regulating traffic at the intersection was broken off.
Present at the scene on the occasion of the previous accident were a number of law enforcement officials, including Wayne Butler, a Vincent police officer; George Humphries, the Vincent police chief; and Shelby County sheriff's deputies Jim Roper and Billy Moore. At that time, Roper and at least one of the Vincent officials leaned the upper section of the post to which the stop sign was still attached against the bottom portion, which was protruding some distance from the ground. The stop sign had not been repaired at the time of the accident involving the Phillips family, and, therefore, traffic at the intersection was unregulated.
On March 4, 1991, the plaintiffs sued, inter alia, the Town of Vincent, alleging that it had breached its duty to maintain traffic control devices at the intersection of Shelby County Highways 62 and 85. The Town moved for a summary judgment, arguing that Shelby County was solely responsible for the maintenance and control *Page 1042 
of the intersection.[1] On March 18, 1992, the trial court granted the Town's motion and certified the resulting judgment as final pursuant to Ala.R.Civ.P. 54(b).
The plaintiffs concede that the "facts of this case are essentially undisputed." Brief of Appellants, at 8. Similarly, the record shows conclusively that until the events involved in this dispute, authority to maintain the stop sign at the intersection had been uniformly exercised by Shelby County.
The plaintiffs also acknowledge a number of cases in which this Court has held that the duty to maintain traffic control devices follows the entity vested with authority to control the relevant roadway. See Harris v. Macon County, 579 So.2d 1295
(Ala. 1991) (Macon County owed no duty to maintain traffic control at an intersection under the exclusive authority of the State Highway Department); Perry v. Mobile County,533 So.2d 602, 604 (Ala. 1988) ("Mobile County owed no duty to maintain" traffic control devices at an intersection under the exclusive authority of the State Highway Department); Nichols v. Town ofMt. Vernon, 504 So.2d 732 (Ala. 1987) (Town of Mt. Vernon owed no duty to restrict parking on a highway under the control of the State Highway Department). They contend, however, that this duty may arise where two governmental entities share or participate in the right of control. For this proposition, they rely on a footnote in Maharry v. City of Gadsden,587 So.2d 966, 968 n. 1 (Ala. 1991), in which we stated: "Last term this Court held in Harris v. Macon County, 579 So.2d 1295
(Ala. 1991), that a right to control, or a right to participate in control, is necessary to hold a county or municipality responsible for negligent construction, design, or maintenance of a roadway."
The plaintiffs' reliance on the Maharry footnote is misplaced. Maharry involved traffic-control authority that was shared by a municipality with the State, not by a municipality with a county. A city's traffic-control authority over county roadways within its municipal limits is governed by statute — specifically, Ala. Code 1975, §§ 11-49-80 and -81, which provide:
 "[§ 11-49-80]. Where the authority to control, manage, supervise, regulate, repair, maintain and improve any street or streets or any part thereof lying within any municipal corporation is vested in the county commission of the county within which such municipal corporation is located, such municipal corporation may, from time to time, resume or take over the authority to control, manage, supervise, repair, maintain and improve such street or streets or part thereof designated in the resolution adopted by the governing body of such municipal corporation to resume or take over such authority.
 "[§ 11-49-81]. Such resolution shall designate the sum or sums ascertained to be the reasonable charge to be paid by such county for being relieved of the burden of the control, management, supervision, repair, maintenance and improvement of such street or streets or part thereof designated in said resolution, and no such resolution shall become effective until and unless the county shall by appropriate action of its county commission pay or contract to pay such sum or sums as may be designated in such resolution."
(Emphasis added.)
The concept of jointly exercised traffic control is inconsistent with the plain language of these sections. The phrase in § 11-49-80 providing for periodic assumption or resumption of authority is meaningless unless such control is to be exercised only by the respective entities consecutively.
That the assumption is to become effective only after a municipal government's *Page 1043 
formal resolution and a definite and positive response by the county commission, as expressly set forth in § 11-49-81, is further evidence that the legislature did not contemplate arbitrarily exercised concurrent traffic control.
These conclusions comport with both safety and economic considerations. Multiple government entities exercising concurrent control over the same roadway or intersection would be forced either to incur duplicative expenditures to replace the same traffic control devices, or sacrifice crucial replacement time while the respective governments attempted to fix responsibility for repairing or replacing a damaged device. The repair time lost while the city and county governments negotiated this question of responsibility would inevitably create a greater risk to the public than would follow if traffic control was unquestionably vested in only one entity.
It is undisputed that the Town of Vincent never invoked the procedures set forth in §§ 11-49-80 and -81 for assuming traffic-control responsibility at the intersection of Shelby County Highways 62 and 85. Under the law and the facts of this case, the Town of Vincent owed no duty to maintain a stop sign at that intersection. Consequently, the judgment of the trial court is affirmed.
AFFIRMED.
HORNSBY, C.J., and STEAGALL, KENNEDY and INGRAM, JJ., concur.
[1] Subsequently, the plaintiffs amended their complaint to allege that the Town of Vincent had breached a duty to inform Shelby County officials about the damaged stop sign, a duty the plaintiffs say the Town of Vincent had voluntarily assumed by a practice of routinely reporting damaged stop signs at that intersection. The amended complaint also alleged that the police officer's assistance in propping up the broken stop sign at the time of the earlier accident represented a voluntary assumption of a duty to regulate traffic at the intersection.