938 So.2d 950 (2005)
Shamalita FRANKLIN et al.
v.
CITY OF ATHENS and CSX Transportation, Inc.
2030606.
Court of Civil Appeals of Alabama.
June 30, 2005.
Rehearing Denied September 16, 2005.
*951 William D. Davis III of Davis & Associates, Huntsville, for appellants.
Benjamin R. Rice of Spurrier, Rice & Hall, Huntsville, for appellee the City of Athens.
Morris Wade Richardson and David W. Spurlock of Adams & Reese/Lange Simpson, LLP, Birmingham, for appellee CSX Transportation, Inc.
PER CURIAM.
Shamalita Franklin, Daphne J. Johnson, Genny Ervin, and Florence Hanserd-Yarborough ("the plaintiffs") appeal from a summary judgment of the Limestone Circuit Court in favor of the City of Athens ("the City") and CSX Transportation, Inc. ("CSX").
On June 13, 2002, the plaintiffs filed a complaint in the trial court naming as defendants the City and CSX. The complaint asserted claims of negligence and wantonness based upon an alleged breach of duties to provide proper warning to the plaintiffs of a "dangerous condition," i.e., a "ditch" dug across Pryor Street in the City in front of a railroad crossing where the plaintiffs were involved in an incident while occupying a moving automobile that resulted in injury to them. The complaint also asserted claims of negligence and wantonness against CSX and the City based upon alleged breaches of a duty to maintain the roadway. The City and CSX filed answers asserting that the complaint failed to state a claim upon which relief could be granted, denying the pertinent *952 allegations of the complaint, and asserting various affirmative defenses. In September and October 2003, the City and CSX filed summary-judgment motions; the plaintiffs then filed a response to both motions. On March 2, 2004, the trial court entered a summary judgment in favor of both the City and CSX. On April 1, 2004, the plaintiffs filed a notice of appeal. The Supreme Court transferred the appeal to this court pursuant to § 12-2-7(6), Ala. Code 1975.
The record reveals that during the first week of June 2000, CSX began upgrading crossings and replacing rails at certain railroad crossings located within the City, including a crossing located on Pryor Street. CSX coordinated street closings with the City and borrowed certain traffic-control devices from the City to block motorized progress across the streets that were to be affected by the railroad crossing maintenance. As repair work began at the Pryor Street crossing, CSX employees placed a row of orange and white traffic "barrels" and an "A-frame" or "sawhorse" painted barricade with an attached "ROAD CLOSED" sign at the intersection of Pryor Street and Marion Street; that intersection was located one block west of the railroad crossing. CSX also posted a second row of orange and white traffic "barrels" immediately in front of the actual crossing.
On the night of June 13, 2000, Franklin was operating an automobile and conveying Ervin to her home after they had visited one of Franklin's relatives in a Huntsville hospital; Johnson and Hanserd-Yarborough were also passengers in Franklin's automobile. Franklin, who was unfamiliar with the area, became lost while driving to Ervin's home. Franklin subsequently turned the automobile onto Pryor Street, proceeding eastbound, and attempted to cross the railroad tracks while slowing down to approximately 10 to 15 miles per hour. As she did so, Franklin drove her vehicle off the asphalt and onto the ballast of the railroad bed. Franklin and her three passengers suffered injuries in the incident and were subsequently taken to a hospital emergency room; they were treated for soreness and bruising and were released.
Although the plaintiffs raise five issues on appeal, those issues focus upon two core questions: whether the trial court erred (1) in entering a summary judgment in favor of the City and (2) in entering a summary judgment in favor of CSX.
"A summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Rule 56, Ala. R. Civ. P. In determining, on a summary judgment motion, whether there is a genuine issue of material fact, the court must view the evidence in the light most favorable to the nonmoving party, resolving all reasonable doubts against the moving party. The burden is initially on the moving party to make a prima facie showing that no genuine issue of material fact exists and that it is entitled to a judgment as a matter of law. If it makes that showing, then the burden shifts to the nonmoving party to present evidence creating a material factual issue for resolution by a jury, so as to avoid the entry of a judgment. Hilliard v. City of Huntsville Electric Utility Board, 599 So.2d 1108 (Ala.1992)."
Ridgeway v. CSX Transp., Inc., 723 So.2d 600, 601 (Ala.1998).
We first address whether the trial court erred in granting the City's summary-judgment motion. The plaintiffs contend that the City's failure to maintain the area of roadway adjacent to the railroad crossing and the City's failure to warn the plaintiffs that the roadway was *953 closed at the time of the June 13, 2000, incident caused the plaintiffs to suffer physical injuries and to incur damages. In order to prevail on a negligence claim, a plaintiff must demonstrate the following elements: (1) that the defendant owes the plaintiff a duty, (2) that the defendant breached that duty, and (3) that the breach proximately caused the plaintiff to be injured. Martin v. Arnold, 643 So.2d 564, 567 (Ala.1994). "The absence of any one of these [elements] renders a complaint bad or the evidence insufficient." Calvert Fire Ins. Co. v. Green, 278 Ala. 673, 677, 180 So.2d 269, 273 (1965). The existence of a duty is a question of law to be decided by the court. Rose v. Miller & Co., 432 So.2d 1237, 1238 (Ala.1983).
The plaintiffs argue that the City had a duty to maintain the area of the roadway adjacent to the Pryor Street crossing because, they say, "governmental entities" have a common-law duty to keep their streets in a reasonably safe condition. See Elmore County Comm'n v. Ragona, 540 So.2d 720, 724 (Ala.1989). We agree.
In its motion for a summary judgment and its submissions in support thereof, the City essentially argues that it owed no duty to the plaintiffs and, therefore, that it was entitled to a judgment as a matter of law. The City asserts that it owed no duty because § 11-49-3, Ala.Code 1975, places a duty on CSX to maintain the railroad crossing. The City also argued that if it owed a duty it did not breach that duty because it was not involved in the repair of the intersection.
Merely because CSX owed a duty with respect to the safety of the motoring public does not mean that the City was relieved of its similar, coexisting duty. The negligence of two or more tortfeasors may combine to result in a single, indivisible injury for which both tortfeasors are liable. See Springer v. Jefferson County, 595 So.2d 1381 (Ala.1992) The City failed to explain why the fact that CSX owed a duty operated to relieve the City of its duty. In this case, if there is substantial evidence indicating that CSX left a hazard in a public roadway overnight without adequate barriers or other warning devices, and that the City knew or should have known that that hazard was left in place by CSX without adequate barriers or other warning devices, the City owed a duty to warn the motoring public of that hazard. This duty is no different from that which the City would have had under § 11-47-190 to warn the public upon learning of a hazard created by any private citizen or other party in a public right-of-way after the hazard became known or should have became known to the City. See, e.g., Hale v. City of Tuscaloosa, 449 So.2d 1243 (Ala.1984); Isbell v. City of Huntsville, 295 Ala. 380, 330 So.2d 607 (1976) (explaining in the context of an action brought against both a railroad company and a city that, among other things, the predecessor of § 11-47-190 made the city liable for culpable neglect to remedy a dangerous condition in a city street negligently created or allowed to exist by a person or corporation not "related to" the city); Louisville & N.R. Co. v. Stanley, 232 Ala. 273, 274, 167 So. 745, 746 (1936) (stating, arguably in dictum, that the city has a primary duty to keep its streets in safe condition and that "the city cannot relieve itself of liability by a delegation of the authority to another"); City of Bessemer v. Brantley, 258 Ala. 675, 679, 65 So.2d 160, 163 (1953) ("It is the duty of the city to use reasonable care that no such danger shall remain in a public street where people have the right to travel, although it was caused by another."); City of Mobile v. Reeves, 249 Ala. 488, 31 So.2d 688 (1947); City of Montgomery v. Moon, 208 Ala. 472, 473, 94 So. 337, 338 (1922) *954 (recognizing, in the context of an action against both a railroad company and a city, that "`[i]t is the duty of the municipality to guard and protect excavations made in the streets and sidewalks, or in such close proximity thereto as to endanger persons traveling on the street'"); City of Montgomery v. Ferguson, 207 Ala. 430, 433, 93 So. 4, 6-7 (1922) (holding, in the context of an action against both a railroad company and a city, that a jury charge stating that "[m]unicipal corporations are due the traveler upon their public thoroughfare the duty of keeping those thoroughfares to the full width thereof in a reasonably safe condition for travel by night as well as by day stated the general rule"); and Brobston v. Burgess, 290 Pa. 331, 337, 138 A. 849, 850 (1927) ("A similar duty to keep in proper repair rests on a municipality as to its streets, and the fact that another may also be sued does not prevent an action against it."). Cf. Southern Ry. Co. v. Quillen, 250 Ala. 536, 541, 35 So.2d 193, 197 (1948) ("the railroad company and the city council could not by their cooperation exonerate either from the consequences of maintaining a nuisance in a public street"). See also City of Mobile v. George, 253 Ala. 591, 45 So.2d 778 (1950).[1]
The City's motion for a summary judgment was based on its position that it did not owe a duty to warn the motoring public of any hazard created by CSX's performance of repairs. That position does not reflect Alabama law. Therefore, the City's motion for a summary judgment is due to be denied.
We next address whether the trial court erred in entering a summary judgment in favor of CSX as to the plaintiffs' claims of negligence in the maintenance of the railroad crossing and wantonness in failing to warn the plaintiffs of a dangerous condition. In its motion for a summary judgment and its submissions in support thereof, CSX argued that it was not liable for negligence because a third party moved the traffic-control devices its employees had left in place. CSX asserts that it is not responsible for a third party's criminal conduct. Additionally, CSX also argued that it was not under a duty to use heavier barriers or to employ a 24-hour security guard. Although CSX is correct in its assertions, it was not entitled to a judgment as a matter of law.
It was undisputed that when Franklin approached the railroad crossing there were no traffic-control devices, neither barrels nor sawhorses, warning that the road was closed. However, CSX submitted affidavits establishing that CSX employees had placed traffic-control devices at the crossing at the end of the workday. The record does not indicate who may have moved the traffic-control devices. It is undisputed that the traffic-control devices were found in a parking lot roughly a block away from the crossing. Franklin testified that she heard a conversation between a police officer and an unidentified person. She testified upon deposition as follows:
"Q. And did [the investigating City police officer] say anything to you about the barricades or these orange barrels being out?

*955 "A. No sir. Him and [another] guy were talking about somebody had moved the barricades. And they said the barricades were in a parking lot a mile away."
CSX argues that it is not responsible for the criminal acts of a third party. Although that assertion is legally correct, when reviewing a motion for a summary judgment, this court reviews the record in a light most favorable to the nonmovant and resolves all reasonable doubts against the movant. Sessions v. Espy, 854 So.2d 515, 521 (Ala.2002). In their response to CSX's motion for summary judgment, the plaintiffs argued:
"CSX Transportation, Inc. suggests that it is not legally responsible in this case because of intervening acts of third parties. While this theory may be valid, it is completely unsupported by any basis in fact. The only slim shred of evidence upon which CSX's contention stands is hearsay,[[2]] overheard by Shamalita D. Franklin, of a conversation between a policeman and `the other guy.' This unidentified individual allegedly stated `somebody had moved the barricades.'
"It is interesting to note that not only is the speaker unidentified, but also the perpetrator of the allege[d] crime. Of course, CSX's offerings are proof of absolutely nothing, much less a conjectured crime. One could just as easily infer, if one were to indulge in such sport, that both the `other guy' speaking and the `somebody' who moved the barricades were both CSX employees."
Reviewing the record in a light most favorable to the plaintiffs and resolving all reasonable doubts against the movant, CSX, we believe that the trial court improperly entered a summary judgment in favor of CSX because a genuine issue of material fact exists. The undisputed fact that the barricades were not in place at 10:00 p.m. gives rise to the reasonable inference that CSX did not place the barricades at all. There is also testimony indicating that the traffic-control devices were in place at the end of the workday and that the traffic control devices were later found a block away. That testimony gives rise to the reasonable inference that someone moved the traffic-control devices after CSX placed them. Viewing the evidence in a light most favorable to the plaintiffs and given the reasonable inferences that can be drawn from the evidence regarding whether the traffic-control devices were in place, there exists a genuine issue of material fact, and CSX was, therefore, not entitled to a judgment as a matter of law.
CSX argued that it owed no duty to use heavier barricades and that it owed no duty to hire a 24-hour security guard. That may be true. However, CSX did have a duty to warn the plaintiffs of the dangerous condition of the roadway.
In light of the foregoing discussion, we hold that the trial court erred in entering a summary judgment for both the City and CSX. Therefore, we reverse the trial court's judgment and remand the cause to the trial court.
REVERSED and REMANDED.
CRAWLEY, P.J., and MURDOCK, J., concur specially.
BRYAN, J., concurs in the result, without writing.
PITTMAN, J., dissents, with writing, which THOMPSON, J., joins.
*956 MURDOCK, Judge, concurring specially.
I concur in the main opinion. I write separately, in part, to comment on the statement in the dissent that the plaintiffs "have failed to demonstrate that the City breached a legal duty to repair and maintain the Pryor Street railroad crossing." 938 So.2d at 958 (Pittman, J., dissenting). I do not read the main opinion as taking the position that the City breached a duty to repair or maintain that crossing. Rather, I read the main opinion as merely stating that we cannot uphold a summary judgment that was entered solely on the basis of the notion that the City had no duty to warn its motoring public of hazards in public streets even if it knew or should have known of those hazards and knew or should have known that adequate warning was not being given by some other party with an obligation to do so. This obligation is not altered by the fact that the hazard may have come about as a result of maintenance or repair work by a private party within an easement that crosses the public street; the fact remains that the hazard is in a public street.
With respect to CSX's liability, I also concur in the main opinion. I write separately to explain why I do not believe the view expressed in the main opinion is based on "pure conjecture" as implied by the dissent. It is true that an employee of CSX testified that the safety devices at issue were in place at the end of the day. What is undisputed, however, is that these devices were not in place just a few hours later. That fact arguably raises a reasonable inference, not conjecture, that the affidavit testimony of the CSX employee was incorrect. The safety devices included a sawhorse barricade, a number of orange traffic barrels, and a "ROAD CLOSED" sign. None of those devices were found lying in the roadway or off to the side of the road in the vicinity of where they were reportedly placed. Instead, there was evidence indicating that those devices were found the next morning situated in a parking lot a mile away from the site of the railroad crossing. These circumstances bolster the inference referenced in the main opinion that the devices may not have been put in place by CSX in the first place. On the other hand, there is no evidence of any criminal activity associated with the absence of the warning devices and barriers at the time of the incident at issue.
CRAWLEY, P.J., concurs.
PITTMAN, Judge, dissenting.
Because I would affirm the trial court's summary judgment in favor of the City of Athens ("the City") and CSX Transportation, Inc., I respectfully dissent.
With respect to the plaintiffs' claims against the City, I do not believe that the City owed a corresponding duty with CSX to maintain the area of the railroad crossing that was the site of the plaintiffs' incident. Ala.Code 1975, § 11-49-3, provides, in pertinent part (emphasis added):
"Street and other railroad companies shall be required to keep their tracks in repair, using such rails as may be prescribed, and shall maintain and keep in repair the streets between their rails and for 18 inches on each side in such manner as the council or other governing body may prescribe."
Under the plain language of the statute, CSX, not the City, had a duty to maintain the streets underlying the subject railroad crossing. Our Supreme Court has also stated that railroad companies are required to keep the approaches to their tracks in good repair as well. See Gulf, M. & N.R. Co. v. Havard, 217 Ala. 639, 642, 117 So. 223, 225 (1928).

*957 "[T]he general rule is that the company must do whatever is reasonably necessary to be done for the safety and convenience of travelers using the crossing. Proper approaches and embankments necessary to enable the traveler to reach and leave the crossing are a part of the crossing, and the company is under duty to construct and maintain them."
217 Ala. at 642, 117 So. at 225 (emphasis added; internal citations omitted); see also Western Ry. v. Still, 352 So.2d 1092, 1097 (Ala.1977) (concluding that a railroad is charged with an affirmative duty to put and to keep railroad approaches and crossings in proper repair for the use of the traveling public).
In Gulf, M. & N.R. Co. v. Pistole, 218 Ala. 695, 120 So. 159 (1928), our Supreme Court held that the nature of a railroad right-of-way is more than a mere easement:
"In Pratt Coal & Iron Co. v. Davis, 79 Ala. 308 (1885), the court, speaking through Chief Justice Stone, said:
"`It cannot be denied, that railroad companies are required to keep the approaches to their track, and the track itself, at public crossings, in good repair. . . . With this exception, however, the track is as much the private property of the railroad company, as is the freehold of a mere private citizen. It is no more a public highway, than is the unenclosed domain of the private landholder.'
"The same writer in Tenn. & Coosa R.R. Co. v. East Ala. Ry. Co., 75 Ala. 516, 51 Am. Rep. 475 (1883), had previously pointed out that land claimed and condemned as a roadbed and right of way of a railroad `stand in a different category from that of ordinary easements.' Many cases bearing upon this question are cited and quoted in Seaboard Air Line Ry. Co. v. Banks, 207 Ala. 194, 92 So. 117 (1921). And in the very recent case of Cent. of Ga. R. Co. v. Faulkner, 217 Ala. 82, 114 So. 686 (1927), this court used the following language:
"`A railway right of way is declared more than mere easement. The important public use to which it is devoted requires that dominion extend to the limits of the right of way granted by law. . . . Ejectment may therefore be maintained, even against the owner of the fee for the entire right of way, without showing any present need for actual occupancy.'
"As illustrative of the character of such right of way, condemnation proceedings (in the absence of agreement) are required before one railroad may cross the right of way of another. It is the taking of property `requiring the payment of just compensation before taking.' Mobile & B.R. Co. v. Louisville & N.R. Co., 192 Ala. 136, 68 So. 905 (1915).
"It is therefore clear, upon reason and authority, that the owner of the fee is without right to himself lay out and dedicate to the public use a street or highway across the railway right of way."
218 Ala. at 699, 120 So. at 162.
In light of the fact that railroad rights-of-way have been determined by our Supreme Court to be, in effect, the private property of railroad companies such as CSX, the City owed no duty to warn of any condition at the Pryor Street railroad crossing. Similarly, if Franklin had driven her automobile into a pothole in the parking lot of a local department store, no one would dispute that the City would have owed no duty to warn of the offending pothole on the store's private property.
"[L]iability for negligence and wantonness is predicated upon the existence of a *958 duty," Colonial Bank of Alabama v. Ridley & Schweigert, 551 So.2d 390, 395 (Ala. 1989), and a breach thereof. Because I believe that the plaintiffs have failed to demonstrate that the City breached a legal duty to repair and maintain the Pryor Street railroad crossing, I cannot conclude that the trial court erred in entering a summary judgment in favor of the City.
With respect to the issue of CSX's liability, I do not believe that a genuine issue of material fact exists that would have prevented the trial court's entry of a summary judgment. CSX adduced evidence indicating that the proper traffic-control devices had been placed at the Pryor Street railroad crossing and that they were in place at the end of the CSX work day. The affidavit of Danny Corbin, a CSX representative, stated that he had supervised the installation of the traffic-control devices at the Pryor Street crossing and that he had not learned of their subsequent removal until he returned to work on the morning after the incident. The plaintiffs' response to CSX's motion for a summary judgment failed to rebut that evidence. In fact, excerpts from Franklin's deposition indicate that she had been prevented from driving onto other city streets by the placement of barricades before she drove onto Pryor Street.
Although the plaintiffs offer pure conjecture on appeal that a CSX employee may have removed the traffic-control devices after the work day had ended, such utter "`speculation and conclusory allegations are insufficient to create a genuine issue of material fact.'" Tinsley v. Henderson, 613 So.2d 1268, 1271 (Ala.1993) (quoting Brooks v. Colonial Chevrolet-Buick, Inc., 579 So.2d 1328, 1330 (Ala.1991)). On a motion for a summary judgment, "[t]he non-movant need not be given the benefit of every inference but only of every reasonable inference." Brown v. Astron Enters., Inc., 989 F.Supp. 1399, 1403 (N.D.Ala.1997) (emphasis added). Although the record indicates that no individual or individuals were ever charged with criminal mischief for having removed the safety devices from the Pryor Street railroad crossing, the record supports only one reasonable inference: the devices were removed by an unknown person or persons between the hours of 6:00 p.m. and 10:00 p.m. on the pertinent night. The record on appeal supports only the logical inference that that removal occurred as a result of actions of a third party, not CSX.
The pertinent question presented by this record is whether CSX had a duty to protect the plaintiffs from the criminal mischief of an unknown third party. "The duty to protect a second person from the criminal acts of a third person arises only when one's negligence or wantonness creates a situation in which it is foreseeable that a third person will commit criminal conduct that endangers the second person." E.H. v. Overlook Mountain Lodge, 638 So.2d 781, 783 (Ala.1994) (emphasis added; citing Moye v. A.G. Gaston Motels, Inc., 499 So.2d 1368 (Ala.1986)). "The number and frequency of prior criminal acts at the place where the injury occurred are used in determining whether a particular criminal act was reasonably foreseeable." Moye, 499 So.2d at 1372. There is no evidence to indicate that CSX had knowledge of any prior criminal acts that had been committed at any of CSX's railroad crossings within the City or within the State of Alabama. Therefore, I cannot conclude that CSX could have reasonably foreseen that the traffic-control devices that it had properly placed at the railroad crossing would have been removed by thievery.
Accordingly, because I believe that the plaintiffs have failed to present substantial *959 evidence creating a genuine issue of material fact as to their claims of negligence and wantonness against the City and CSX, I would affirm the trial court's summary judgment.
THOMPSON, J., concurs.
NOTES
[1] Of course, whether the City ultimately is proven to have breached its duty is another question. For example, if the evidence were to show that CSX had in fact put in place adequate warning barriers, but that those barriers subsequently were removed, a question of fact might exist as to whether sufficient time passed between the removal of the barriers and the incident wherein the plaintiffs were injured so as to allow the inference that the City should have discovered the resulting danger and acted upon that discovery. See generally, e.g., Hale, 449 So.2d at 1247.
[2] The plaintiffs point out in their response to CSX's motion for a summary judgment and again on appeal that CSX based its intervening-acts-of-third-parties argument on hearsay; however, there was no motion to strike the hearsay at trial or on appeal. Therefore, we do not discuss that issue.