Shamalita Franklin, Daphne Johnson, Genny Ervin, and Florene Hanserd-Yarbrough[1] appealed to this Court from a summary judgment entered in favor of CSX Transportation, Inc., and the City of Athens. We transferred the appeal to the Court of Civil Appeals pursuant to § 12-2-7(6), Ala. Code 1975. The Court of Civil Appeals reversed the judgment. Franklin v. City ofAthens, 938 So.2d 950 (Ala.Civ.App. 2005). We granted certiorari review; we now affirm.
 I. Facts and Procedural History
The Court of Civil Appeals stated the facts and procedural history as follows:
 "On June 13, 2002, the plaintiffs filed a complaint in the trial court naming as defendants the City [of Athens] and CSX. The complaint asserted claims of negligence and wantonness based upon an alleged breach of duties to provide proper warning to the plaintiffs of a `dangerous condition,' i.e., a `ditch' dug across Pryor Street in the City in front of a railroad crossing where the plaintiffs were involved in an incident while occupying a moving automobile that resulted in injury to them. The complaint also asserted claims of negligence and wantonness against CSX and the City based upon alleged breaches of a duty to maintain the roadway. The City and CSX filed answers asserting that the complaint failed to state a claim upon which relief could be granted, denying the pertinent allegations of the complaint, and asserting various affirmative *Page 961 
defenses. In September and October 2003, the City and CSX filed summary judgment motions; the plaintiffs then filed a response to both motions. On March 2, 2004, the trial court entered a summary judgment in favor of both the City and CSX. On April 1, 2004, the plaintiffs filed a notice of appeal. The Supreme Court transferred the appeal to this court pursuant to § 12-2-7(6), Ala. Code 1975.
 "The record reveals that during the first week of June 2000, CSX began upgrading crossings and replacing rails at certain railroad crossings located within the City, including a crossing located on Pryor Street. CSX coordinated street closings with the City and borrowed certain traffic control devices from the City to block motorized progress across the streets that were to be affected by the railroad crossing maintenance. As repair work began at the Pryor Street crossing, CSX employees placed a row of orange and white traffic `barrels' and an `A-frame' or `sawhorse' painted barricade with an attached `ROAD CLOSED' sign at the intersection of Pryor Street and Marion Street; that intersection was located one block west of the railroad crossing. CSX also posted a second row of orange and white traffic `barrels' immediately in front of the actual crossing.
 "On the night of June 13, 2000, Franklin was operating an automobile and conveying Ervin to her home after they had visited one of Franklin's relatives in a Huntsville hospital; Johnson and Hanserd Yarborough were also passengers in Franklin's automobile. Franklin, who was unfamiliar with the area, became lost while driving to Ervin's home. Franklin subsequently turned the automobile onto Pryor Street, proceeding eastbound, and attempted to cross the railroad tracks while slowing down to approximately 10 to 15 miles per hour. As she did so, Franklin drove her vehicle off the asphalt and onto the ballast of the railroad bed. Franklin and her three passengers suffered injuries in the incident and were subsequently taken to a hospital emergency room; they were treated for soreness and bruising and were released."
938 So.2d at 951-52.
After reviewing the parties' arguments, as well as those of amici curiae appearing on behalf of the City,[2] we conclude that the Court of Civil Appeals correctly reversed the summary judgment as to both the City and CSX.
 II. Standard of Review
"The standard by which this Court will review a motion for summary judgment is well established:
 "`The principles of law applicable to a motion for summary judgment are well settled. To grant such a motion, the trial court must determine that the evidence does not create a genuine issue of material fact and that the movant is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. When the movant makes a prima facie showing that those two conditions are satisfied, the burden shifts to the nonmovant to present "substantial evidence" creating a genuine issue of material fact. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98
(Ala. 1989); § 12-21-12(d)[,] Ala. Code 1975. Evidence is "substantial" if it is of "such *Page 962 
weight and quality that fair minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assur. Co. of Florida, 547 So.2d 870, 871 (Ala. 1989).
 "`In our review of a summary judgment, we apply the same standard as the trial court. Ex parte Lumpkin, 702 So.2d 462, 465 (Ala. 1997). Our review is subject to the caveat that we must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant. Hanners v. Balfour Guthrie, Inc., 564 So.2d 412 (Ala. 1990).'"
Payton v. Monsanto Co., 801 So.2d 829, 832-33
(Ala. 2001) (quoting Ex parte Alfa Mut. Gen. Ins. Co.,742 So.2d 182, 184 (Ala. 1999)).
 III. The City of Athens
In reversing the summary judgment in favor of the City, the Court of Civil Appeals stated:
 "In its motion for a summary judgment and its submissions in support thereof, the City essentially argues that it owed no duty to the plaintiffs and, therefore, that it was entitled to a judgment as a matter of law. The City asserts that it owed no duty because § 11-49-3, Ala. Code 1975, places a duty on CSX to maintain the railroad crossing. The City also argued that if it owed a duty it did not breach that duty because it was not involved in the repair of the intersection.
 "Merely because CSX owed a duty with respect to the safety of the motoring public does not mean that the City was relieved of its similar, coexisting duty. The negligence of two or more tortfeasors may combine to result in a single, indivisible injury for which both tortfeasors are liable. See Springer v. Jefferson County, 595 So.2d 1381 (Ala. 1992). The City failed to explain why the fact that CSX owed a duty operated to relieve the City of its duty. In this case, if there is substantial evidence indicating that CSX left a hazard in a public roadway overnight without adequate barriers or other warning devices, and that the City knew or should have known that that hazard was left in place by CSX without adequate barriers or other warning devices, the City owed a duty to warn the motoring public of that hazard. This duty is no different from that which the City would have had under § 11-47-190 to warn the public upon learning of a hazard created by any private citizen or other party in a public right of way after the hazard became known or should have became known to the City. . . .
 "The City's motion for a summary judgment was based on its position that it did not owe a duty to warn the motoring public of any hazard created by CSX's performance of repairs. That position does not reflect Alabama law. Therefore, the City's motion for a summary judgment is due to be denied."
938 So.2d at 953-54. The City and the amici curiae maintain that the Court of Civil Appeals has erroneously imposed upon the City both a duty to maintain a railroad crossing and a duty to warn of a dangerous condition at a railroad crossing. The City argues to this Court, as it did to the Court of Civil Appeals, that because §11-49-3, Ala. Code 1975, imposes upon a railroad the duty to maintain a railroad crossing and the "the streets between their rails and for 18 inches on each side," the City had no duty whatsoever in this situation. The City and the amici curiae argue that the *Page 963 
Court of Civil Appeals has created a theory of dual liability that will impose a significant burden upon the cities and counties of this State, and that this Court rejected the concept of dual liability in Yates v. Town of Vincent,611 So.2d 1040 (Ala. 1992).
We do not read the main opinion of the Court of Civil Appeals as broadly as do the City and the amici curiae. We agree with the views of Judge Murdock, expressed in his special concurrence, that the opinion does not impose upon the City the duty to maintain a railroad crossing and the adjacent portion of roadway the railroad is charged with maintaining; rather the opinion merely recognizes that if CSX had allowed a hazard to exist upon a public street without adequately warning the public of that hazard, the City had a duty to warn
the public of that hazard if it knew or should have known that the hazard existed. Judge Murdock stated:
 "I do not read the main opinion as taking the position that the City breached a duty to repair or maintain that crossing. Rather, I read the main opinion as merely stating that we cannot uphold a summary judgment that was entered solely on the basis of the notion that the City had no duty to warn its motoring public of hazards in public streets even if it knew or should have known of those hazards and knew or should have known that adequate warning was not being given by some other party with an obligation to do so. The City's obligation is not altered by the fact that the hazard may have come about as a result of maintenance or repair work by a private party within an easement that crosses the public street; the fact remains that the hazard is in a public street."
938 So.2d at 956.
The City and the amici curiae rely heavily upon Yates v.Town of Vincent, supra, in arguing that the City did not have a duty coexistent with that of CSX to warn the public of defects in a roadway. That reliance, however, is misplaced. InYates, this Court rejected the concept of "jointly exercised traffic control" in holding that the Town of Vincent owed no duty to maintain a stop sign at an intersection of county highways controlled by Shelby County.611 So.2d at 1042-43. Yates supports the argument that the City owed no duty to maintain the railroad crossing or the portion of the roadway immediately adjacent to it, but it does not address the issue whether the City had a duty towarn the public of a defect that existed in a public street if it knew or should have known of the defect.
The Court of Civil Appeals pointed out that the City has a statutory duty pursuant to § 11-47-190, Ala. Code 1975, to warn the public upon learning of any hazard created in a public right of way after the hazard has become, or should have become, known to the City. Section 11 — 47 — 190 provides:
 "No city or town shall be liable for damages for injury done to or wrong suffered by any person or corporation, unless such injury or wrong was done or suffered through the neglect, carelessness or unskillfulness of some agent, officer or employee of the municipality engaged in work therefor and while acting in the line of his or her duty, or unless the said injury or wrong was done or suffered through the neglect or carelessness or failure to remedy some defect in the streets, alleys, public ways or buildings after the same had been called to the attention of the council or other governing body or after the same had existed for such an unreasonable length of time as to raise a presumption of knowledge of such defect on the part of the council or other governing body *Page 964 
and whenever the city or town shall be made liable to an action for damages by reason of the unauthorized or wrongful acts or negligence, carelessness or unskillfulness of any person or corporation, then such person or corporation shall be liable to an action on the same account by the party so injured."
The Court of Civil Appeals also cited several cases in which this Court discussed a city's duty to warn citizens of hazards in public streets, even if that hazard was created by another. See City of Bessemer v. Brantley,258 Ala. 675, 679, 65 So.2d 160, 163 (1953) ("It is the duty of the city to use reasonable care that no such danger shall remain in a public street where people have the right to travel, although it was caused by another."); City of Montgomery v. Moon,208 Ala. 472, 473, 94 So. 337, 338 (1922) ("`It is the duty of the municipality to guard and protect excavations made in the streets and sidewalks, or in such close proximity thereto as to endanger persons traveling on the street.'" (quoting 6 McQuillin, Municipal Corporations § 2774));City of Montgomery v. Ferguson, 207 Ala. 430, 433,93 So. 4, 6-7 (1922) (jury charge that "Municipal corporations are due the traveler upon their public thoroughfare the duty of keeping those thoroughfares to the full width thereof in a reasonably safe condition for travel by night as well as by day," stated the general rule).
We note, as did the Court of Civil Appeals in its main opinion, that although we hold that the City owed Franklin and her passengers a duty to warn of the dangerous condition at the railroad crossing, the existence of that duty would not, in and of itself, be sufficient to allow them to prevail on their negligence claim. Franklin and her passengers must prove the following elements: (1) that the City owed them a duty, (2) that the City breached that duty, and (3) that the breach proximately caused Franklin and her passengers to be injured. SeeMartin v. Arnold, 643 So.2d 564, 567 (Ala. 1994). The Court of Civil Appeals noted:
 "[W]hether the City ultimately is proven to have breached its duty is another question. For example, if the evidence were to show that CSX had in fact put in place adequate warning barriers, but that those barriers subsequently were removed, a question of fact might exist as to whether sufficient time passed between the removal of the barriers and the incident wherein the plaintiffs were injured so as to allow the inference that the City should have discovered the resulting danger and acted upon that discovery."
938 So.2d at 954 n. 1.
We agree with the Court of Civil Appeals that the City owed a duty to Franklin and her passengers to warn them of the danger in the roadway if the City knew or should have known that the danger existed; therefore, we affirm the judgment of the Court of Civil Appeals reversing the summary judgment entered in favor of the City.
 IV. CSX Transportation, Inc.
In reversing the summary judgment entered in favor of CSX, the Court of Civil Appeals stated:
 "It was undisputed that when Franklin approached the railroad crossing there Were no traffic control devices, neither barrels nor sawhorses, warning that the road was closed. However, CSX submitted affidavits establishing that CSX employees had placed traffic control devices at the crossing at the end of the workday. The record does not indicate who may have moved the traffic control devices. It is undisputed that the traffic control devices were *Page 965 
found in a parking lot roughly a block away from the crossing. . . .
 ". . . .
 "Reviewing the record in a light most favorable to the plaintiffs and resolving all reasonable doubts against the movant, CSX, we believe that the trial court improperly entered a summary judgment in favor of CSX because a genuine issue of material fact exists. The undisputed fact that the barricades were not in place at 10:00 p.m. gives rise to the reasonable inference that CSX did not place the barricades at all. There is also testimony indicating that the traffic control devices were in place at the end of the workday and that the traffic control devices were later found a block away. That testimony gives rise to the reasonable inference that someone moved the traffic control devices after CSX placed them. Viewing the evidence in a light most favorable to the plaintiffs and given the reasonable inferences that can be drawn from the evidence regarding whether the traffic control devices were in place, there exists a genuine issue of material fact, and CSX was, therefore, not entitled to a judgment as a matter of law."
938 So.2d at 954-55.
CSX maintains that the opinion of the Court of Civil Appeals improperly reversed the summary judgment entered in its favor based upon speculation that some unknown person or persons had moved the safety devices from the accident site at some point after the CSX workday ended. CSX takes the position that the evidence is undisputed that the warning devices were in place at the end of the workday and that if they were missing at the time of the accident, they were missing because they had been moved by some unknown person or persons.[3] CSX first argues that in this case, where two competing, but equally reasonable, inferences can be drawn from the facts, choosing one inference over another is engaging in speculation, conjecture, and guesswork. It relies upon Turner v. Azalea Box Co.,508 So.2d 253, 254 (Ala. 1987), in which this Court held:
 "When evidence points equally to inferences that are favorable and to inferences that are unfavorable to the moving party, the evidence lacks probative value; and the evidence may not be used to support one inference over another because such use is mere conjecture and speculation."
CSX, relying upon Thompson v. Lee, 439 So.2d 113, 115
(Ala. 1983), next argues that the any potential liability it has in this case cannot be predicated on the mere fact that Franklin and her passengers had an accident at the construction site. InThompson this Court held:
 "One can infer negligence from the injury itself only in the rare circumstance where the instrumentality causing the injury is in the defendant's exclusive possession and the injury would not have occurred absent negligence."
Finally, CSX argues that it was not responsible for a third party's criminal conduct, relying upon Ex parte Wild WildWest Social Club, Inc., 806 So.2d 1235, 1240 (Ala. 2001), in which this Court noted:
 "`We have held that in order to recover against a defendant for harm caused by the criminal actions of a third party, the plaintiff must establish that the defendant "knew or had reason to know of a *Page 966 
probability of conduct by third persons that would endanger the plaintiff." Also, a subsequent cause of the plaintiffs injuries is not an "intervening cause," unless it was unforeseeable.'"
(Quoting Thetford v. City of Clanton, 605 So.2d 835,840 (Ala. 1992) (citation omitted).)
As the main opinion of the Court of Civil Appeals points out, and as Judge Murdock elaborates in his special concurrence, despite the affidavit testimony of a CSX employee that the traffic barrels were in place at the end of the workday on the day of the incident involving Franklin's vehicle, the fact that the barrels were found after the accident some distance away from the railroad crossing gives rise to a plausible inference that the barrels were not, in fact, placed at the site when the workday ended. Judge Murdock stated:
 "It is true that an employee of CSX testified that the safety devices at issue were in place at the end of the day. What is undisputed, however, is that these devices were not in place just a few hours later. That fact arguably raises a reasonable inference, not conjecture, that the affidavit testimony of the CSX employee was incorrect. The safety devices included a sawhorse barricade, a number of orange traffic barrels, and a `ROAD CLOSED' sign. None of those devices were found lying in the roadway or off to the side of the road in the vicinity of where they were reportedly placed. Instead, there was evidence indicating that those devices were found the next morning situated in a parking lot a mile[4] away from the site of the railroad crossing. These circumstances bolster the inference referenced in the main opinion that the devices may not have been put in place by CSX in the first place. On the other hand, there is no evidence of any criminal activity associated with the absence of the warning devices and barriers at the time of the incident at issue."
938 So.2d at 956-. If indeed the affidavit testimony of the CSX employee was not correct, then inferences other than those advanced by CSX defeat CSX's arguments.
In Turner v. Azalea Box Co., supra, Turner was injured when a wooden pallet broke when he stepped on it. Evidence presented in the case showed that Azalea Box Company was not the only company that had sold pallets to Turner's employer, and no evidence was presented as to which company had manufactured the pallet on which he had been injured. In that case, any determination as to which company had manufactured the pallet would have been speculative. We are not presented here with a similar situation. The fact that the safety devices were found at least a block away from the accident site (see note 4) and were not pushed aside at a point adjacent to the site or had not disappeared completely, makes the inference that they were never put in place on the day of the incident a reasonable one.
Likewise, the inference that the safety devices were never placed at the accident site on the day of the incident distinguishes this case from Thompson and Ex parteWild Wild West Social Club, Inc., supra. CSX's liability is not predicated on the mere fact that the accident happened and that safety devices were not present at the site, nor is its liability predicated on the criminal acts of a third party. At this *Page 967 
stage in the case, several plausible and reasonable inferences can be drawn from the facts presented; therefore, a genuine issue of material fact is presented, and the case is not appropriate for disposition by summary judgment. See, e.g.,Prince v. Poole, 935 So.2d 431 (Ala. 2006);Wilkerson v. Johnson, 868 So.2d 417 (Ala. 2003).
We agree with the Court of Civil Appeals that, viewing the evidence in a light most favorable to the nonmovants, Franklin and her passengers, we must conclude that a genuine issue of material fact exists and that CSX was not entitled to a summary judgment. Therefore, we affirm the judgment of the Court of Civil Appeals reversing the summary judgment entered in favor of CSX.
 V. Conclusion
The judgment of the Court of Civil Appeals is affirmed.
AFFIRMED.
NABERS, C.J., and WOODALL, SMITH, and PARKER, JJ., concur.
[1] This plaintiff's name in the Court of Civil Appeals is spelled Florence Hanserd-Yarborough.
[2] Amici curiae the Association of County Commissioners of Alabama, the Alabama League of Municipalities, and the City of Huntsville have filed briefs in support of the City's position.
[3] CSX also states in its brief that it accepts the factual allegation that the barricades were absent from the crossing at the time of the accident only for purposes of the summary judgment arguments and that if this case is tried it will contest the allegation that the safety devices were missing when Franklin drove into the ditch.
[4] We note that Franklin testified in her deposition that she heard a police officer and another man discussing the fact that the safety devices had been located in a parking lot ablock away from the accident site. This discrepancy, however, does not detract from the logic of Judge Murdock's analysis.